CASE 70—ACTION TO RECOVER DAMAGES FOR DELAY IN THE SHIPMENT
OF A CORPSE—MAY 29.

# Louisville & N. R. R. Co. v. Hull.

| 113 | 561 |
|-----|-----|
| f124 | 830 |

| 113 | 561 |
|-----|-----|
| 127 | 141 |

APPEAL FROM .WEBSTER CIRCUIT COURT.

JUDGMENT FÓR PLAINTIFF AND DEFENDANT APPEALS.  REVERSED.

CARRIERS—DELAY IN SHIPMENT OF CORPSE—MENTAL SUFFERING AS
ELEMENT OF DAMAGES—EXCESSIVE VERDICT—MISCONDUCT OF
COUNSEL IN ARGUMENT.

Held:  1. In an action against a carrier to recover damages for de-
lay in the shipment of a corpse, there may be a recovery for
mental suffering.
2. A verdict for $1,640 for a delay of a few hours in the ship-
ment of the corpse of plaintiff's wife, resulting in a delay in
the interment only from one afternoon until the next morn-
ing is excessive: plaintiff being treated with proper courtesy,
and there being no intimation that the condition of the corpse
rendered a speedy interment necessary.
3. It was improper for counsel for plaintiff to refer in argument
to the jury to statements in the pleadings of defendant, those
pleadings not having been given in evidence on the trial; and
it was also improper for him to go outside the evidence heard
by the jury, and the law of the case as given by the court,
and especially improper for him to state facts of his personal
experience, not in evidence, which were calculated to prejudice
the jury against the defendant.
4. The statement in the bill of exceptions that it contains all of
the evidence heard on the trial is conclusive that it contains
all of the evidence heard, though it appears from the grounds
for a new trial that complaint was made as to the reading
of certain depositions, which are not incorporated in the bill.

YEAMAN & YEAMAN, GORDON & GORDON, H. W. BRUCE, E.
W. HINES AND B. D. WARFIELD, FOR APPELLANT.

## SUMMARY AND AUTHORITIES.

1. Appellee sued and recovered $1,640 for delay in delivering
a casket containing the remains of his wife.

Louisville & N. R. R. Co. v. Hull.

2. There can be no property in a human corpse. Keys v. Konkeil, 119 Mich., 550, 75 Am. St. Rep., 423.

3. The petition states no cause of action.

4. There can be no recovery for mental anguish alone, disconnected from pecuniary loss, physical injury, willful neglect, or insult. Hobbs v. London, &c., 10 Q. B., 111; Lynch v. Knigh, 9 H. L. C., 577; South'd on Dam's, vol. 1, pp. 156, 732, 734, 736; Webb's Pollock on Torts, pp. 56-57; Wood's Mayne on Dam., p. 74; W. U. T. Co. v. Rogers, 68 Miss., 748, 24 Am. St. Rep., 300 and cases cited, 13 L. R. A, 859 and cases cited; Am. & Eng. Ency. Law, vol. 25, pp. 822-3, and cases cited; West v. W. U. T. Co., 39 Kas., 93, 7 Am. St. Rep., 531, and cases cited; Dawson v. L. & N. Ry. Co., 4 Ky. Law Rep., 801; N. N. & M. V. Co. v. Gholoon, 10 Ky. Law Rep., 938; City Transfer Co. v. Robinson, 12 Ky. Law Rep., 555.

5. A different rule origainated in Texas in the So Relle case, where damages were awarded for failure to deliver a social telegram. The courts of that State have since found it necessary to restrict the rule. So Relle v. W. U. T. Co., 55 Tex., 308, 40 Am. St. Rep., 805; Gulf v. Levy, 59 Tex., 564, 46 Am. St. Rep., 278; Tel. Co. v. Cooper, 71 Tex., 507, 10 Am. St. Rep., 771; Powell v. Tel. Co., 75 Tex., 26, 12 S. W. 534.

6. This court has followed the So Relle case, but has confined the rule to that particular class of cases, (social telegrams), and like the Texas court, has found it necessary to restrict its application. Chapman v. W. U. T. Co., 90 Ky., 625, 14 S. W., 775; W. U .T. Co., v. Mattheys, 21 Ky. Law Rep., 145, 55 S. W., 427; W. U. T. Co v. Johnson, 22 Ky. Law Rep., 55 S. W., 427; W. U. T. Co. v. McIlvoy, 22 Ky. Law Rep., 55 S. W., 428; W. U. T. Co. v. Van Cleve, 22 Ky. Law Rep., 53, 54 S. W., 829; W. U. T. Co. v. Steinberger, 21 Ky. Law Rep., 1289, 54 S. W., 829; W. U. T. Co. v. Fisher, 21 Ky. Law Rep., 1293, 54 S. W., 830; Davidson v. W. U. T. Co., 21 Ky. Law Rep., 1292, 54 S. W., 830; W. U. T Co. v. Crider, 21 Ky. Law Rep., 1236, 54 S. W., 963; Grady v. W. U. T. Co., 19 Ky. Law Rep., 1455, 43 S. W., 468; Morrow v. W. U. T. Co., 21 Ky. Law Rep., 1263, 54 S. W., 853; Taliferro v. W. U. T. Co., 21 Ky. Law Rep., 1290, 54 S. W., 824.

7. There can be no recovery on allegation without proof. The appellee alleges mental anguish, the allegation is traversed, and there is no proof to sustain it.

8. There was no negligence in forwarding the casket, it was sent forward on the first train after appellant received it.

9. Other corpse cases are, like the So Relle case, from Texas, and are wholly unlike this case. Hale v. Bonner, 82 Tex.,

Louisville & N. R. R. Co. v. Hull.

33, 27 Am. St. Rep., 850, 17 S. W., —, 14 L. R. A., 336; Wells Fargo v. Fuller, 13 Tex. C. A., —, 35 S. W., 824.

10. The damages are grossly excessive, and more than this court has approved of in any "social telegram" case, the only other sort of case in which damages for mental suffering alone have been' given. McIlvoy v. Tel. Co., 22 Ky. Law Rep., —, 55 S. W., 428; Van Cleve v. Same, 22 L. R., —, 54 S. W., 827; Tel. Co. v. Miller (Tenn.) 33 S. W., 725.

11. The statements of appellee's counsel to the jury were improper, and highly prejudicial to appellant's rights, and the court below erred in refusing to exclude them from the jury. Civil Code, subsec. 2, sec 340; Brown v. Swineford, 44 Wis., 282, 28 Am. Rep., 589; Davis v. Brown, 17 Ky. Law Rep., 1428, 36 S. W., 535; Cunningham v. Speagle, 20 Ky. Law Rep., 1833; 50 S. W., 245; Rhodes v. Commonwealth, 21 Ky. Law Rep., 1070, 54 S. W., 170; Gilbert v. Commonwealth, 21 Ky. Law Rep., 544, 54 S. W., 805; Oldham v. Commonwealth, 22 Ky. Law Rep., 520, 58 S. W., 419.

12. The instructions given to the jury by the court below were erroneous; under them, the jury were bound to find for the plaintiff, regardless of defendant's evidence, or any evidence it might have introduced.

L. P. LITTLE, W. A. TAYLOR, G. W. HICKMAN and BAKER & BAKER, ATTORNEYS FOR APPELLEE.

POINTS CONTENDED FOR AND AUTHORITIES.

1. Appellee having arrived at the union depot, Nashville, Tenn., at 6:40 a. m., May 2, 1900, enroute from Asheville, N. C., to Slaughtersville, Ky., with burial case containing his wife's body, purchased of appellant tickets for himself, little girl, and the corpse to Slaughtersville on its train No. 52, scheduled to depart at 7:10 a. m.; as early as 6:50 a. m., he presented the ticket for the corpse to appellant's baggage agent; who punched and returned it, saying (in answer to appellant's question), there was nothing further for him to do in regard to the body but to go. and take his seat in the train, which he did. At the time the ticket was punched, the burial case was on a truck at the door of appellant's baggage room, and before the train started appellee exhibited the "corpse" ticket to the conductor, who assured him it was all right and not to be uneasy, and on this assurance he returned to his seat in the coach and the train almost immediately started, but the burial case was not on the train which was due at Slaughtersville at noon. After the train departed the conductor inform-

ed appellee that his wife's body had been shipped off on the Northwestern railroad; four hours later he was shown a telegram from appellant's superintendent, saying that the body had been secured. on another road and would be shipped on the night train.    Arrangements had been made for the funeral and interment in the afternoon of the 27th, but the body did not reach Slaughtersville until midnight or later, and was not buried until the following day.    Appellee sued for $2,000 damages for expenses and mental suffering.    The verdict for $1,640 was authorized by the foregoing facts.

2. The rule is settled in this State that damages may be re-ocvered for mental suffering in cases of this character although the suffering was not attended by physical injury or insult. Chapman v. W. N. Tob. Co., 90 Ky.

3. The rule allowing recovery of damages for mental anguish arising from non-delivery of telegram, applies in a case like the present.

4. In actions like the present, it is unnecessary to prove by express evidence that a party suffered mental anguish by his own statements on the trial, or by the testimony of others as to his declarations or appearance, but the jury may infer such suffering from the circumstances.    8 A. & E. Ency., 639; St. Louis R. R. Co. v. Trimble, 54 Ark., 354; Stowe v. Heywood, 7 Allen, 118; Bolt v. Budwig, 10 Neb., 739; Galveston R. R. Co. v. Thornberry, 17 S. W. R., 521; W. U. Tel. Co. v. McLeod, 22 Ib., 988; W. U. Tel. Co. v. Porter, 26 Ib., 866; W. U. Tel. Co. v. Adams, 75 Tex., 531.

5. Appellant failed to exercise that diligence which an ordinarily prudent man would have used under like circumstances in transporting his own goods and such failure constituted actionable negligence.    5 A. & E. Ency. (2d ed.) 246; McGraw v. B. & O. R. R. Co., 41 A. R., 701; Wells F. Co. Exp. v. Fuller, 35 S. W. R., 824.

6. Appellee was not guilty of contributory negligence in failing to superintend or assist in the shipment of the corpse, after being assured by appellant's agents that there was nothing he could do.

7. It was not prejudicial misconduct for appellee's counsel in argument to refer to the issues made in the pleadings or refer to an irrelevant fact not in evidence by way of illustration; or refer to the practice of taking the affidavits of witnesses before they are called to testify; or to err in quoting the testimony of a witness, especially where the quotation was substantially correct; or to insinuate that a corporation is wealthy, if in fact its wealth is a matter of common knowledge in the whole State.

Louisville & N. R. R. Co. v. Hull.

8. There is no precise rule for estimating damages in actions for mental suffering, but a jury should be at liberty to award fair damages. Chapman v. W. U. Tel. Co., 90 Ky., 265.

9. The universal rule in this class of cases is that a judgment will not be set aside as excessive, unless the excess is so great as to indicate prejudice, passion, partiality or corruption on the part of the jury. 8 A. & E. Ency. (2d ed.) 628, 629.

10. Every verdict should be regarded *prima facie* as the result of the exercise of an honest judgment upon the part of the jury. L. & N. R. R. Co. v. Mitchell, 87 Ky., 327.

11. Where an undertaking by one party has been violated without excuse, the other party is entitled to at least nominal damages. 8 A. & E. Ency. (2d ed.) 553.

12. Where the jury has found and assessed actual damages in a large sum. Appellant was not prejudiced by an instruction as to nominal damages.

13. If all the evidence heard by the jury is not embraced in the bill of exceptions, the only question on appeal is as whether the pleadings show a cause of action. Jones & Jackson, 13 Ky. Law Rep., 253; Scott & Means, 13 Ibid., 911; Adams & Bement, 96 Ky, 334.

OPINION OF THE COURT BY JUDGE HOBSON—REVERSING.

The wife of appellee, G. W. Hull, died at Asheville, N. C., on May 26, 1900. He lived at Slaughtersville, Ky., and started home with the corpse of his wife. He bought tickets to Nashville for himself, child, and the corpse. About sun-up, as he was approaching Nashville, he saw the conductor, and had him to telegraph to the ticket agent at Nashville to have the tickets ready for him. He did this for fear of want of time between the arrival of his train and the departure of the train for Slaughtersville. When he got to Nashville he went immediately with his little girl to the ticket office, and told the agent he wanted two whole tickets and a half ticket to Slaughtersville. The agent said to him to get back in line, and wait until his turn came. He said, "Didn't you get a telegram to have these tickets ready?" The agent answered, "Yes, but I knew you had plenty of time, and didn't get them ready."

Hull then took his place in the line, and after a while got up to the window and received his tickets. He then said, "One of these tickets is for a corpse." The agent answered, "I know it, and have it already marked." Hull then asked, "What must I do with the corpse ticket?" The agent said, "Take that and show it to the baggage master in the baggage room." Hull went immediately to the baggage room, and handed the baggage master the corpse ticket, telling him he had a ticket for a corpse. The baggage master punched it and handed it back to him. Hull then said, "Now, who must I give it to?" He said, "Keep it, and give it to the conductor on the train. That is all you have to do. You need not be uneasy. Everything will be all right." The corpse was then between the baggage room door and the gate, setting on a truck between the door and the fence on the platform. Hull got on the train and sat there some minutes. Presently he saw his trunk pass to the baggage car, and, not seeing the corpse go by, went out to the conductor, who was standing beside the train, showed him his tickets, and told him he had a ticket for a corpse, and wanted to be sure that everything was all right. He wanted to know who to give the ticket to. The conductor said: "That is all right. Whenever you get a ticket like that, that is all you have got to do. I will take that ticket up on the train." Hull replied: "I am uneasy. I am afraid everything isn't all right. I have seen my trunk pass along, but I haven't seen the corpse." Then the conductor halloed to the porter, and asked if there was a corpse on the train. The porter said, "No." The conductor ran into the baggage room to see about it. He was gone probably two minutes, and when he came out the train started immediately. He came into the coach where Hull was, and told him that his wife's remains had been

sent off on the Northwestern. Hull said: "How did this happen? This is an awful thing." He said: "I don't know. It is a terrible blunder. It is an inexcusable mistake." Hull asked what he was going to do about it, and he said that he would telegraph to the superintendent, and get the box brought back and sent up on another train. At Earlington he brought Hull a telegram, stating that he had found the corpse; had secured it on some other road; that it would be sent up on the first passenger train; and for him to extend to Hull any courtesy he could. Hull reached Nashville at 6:40 a. m. The train for Slaughtersville left at 7:10 a. m. The conductor was still looking for the corpse, when he was ordered by the station master to pull out, as it was then two minutes past leaving time. The box containing the corpse had tacked upon it a card reading: "Mrs. G. W. Hull, Slaughtersville, Kentucky." Hull had telegraphed to Slaughtersville that he would come on the morning train, and have the burial that evening. The train was due at Slaughtersville at noon. They got everything in readiness for the funeral, and, when the train arrived without the corpse, the relatives who had come to the station returned home, and those who had come to the church for the funeral, three miles in the country, were sent home. Some time after midnight the corpse reached Slaughtersville, and it was buried the next day. It rained the next morning, and a great many did not come. Quite a concourse had assembled the day before. Hull had been nursing his sick wife six months. His vitality was much exhausted, and he was in a weakened condition, so that it was only by a strong effort of the will that he was able to be on his feet. He seemed a good deal confused, looked like he was almost broken down, and was terribly worried over his trip, and the way he had been

disappointed.    He filed this suit to recover damages of the
railroad company, and proved on the trial substantially
the above facts.    The proof for the company was to the
effect that when the corpse reached Nashville it was placed
on a truck by the side of the train, and remained there
until after the Slaughtersville train left.    After this it
was taken to the baggage room of the road over which it
had come, and later in the day, when the mistake was
found out, was taken over to the baggage room of appel-
lant.    The baggage master and the conductor denied the
statements of Hull given above, and testified that the
corpse was not in charge of appellant's agents until after
the train for Slaughtersville had left.    Their testimony
is confirmed by a number of employes about the station.
Hull's version of the transaction is confirmed by his little
girl, by the punched marks in the corpse ticket, and some
other circumstances.    The jury to whom the case was sub-
mitted returned a verdict in favor of Hull for $1,640. and
the defendant appeals. .

The court instructed the jury that if, after Hull pur-
chased the tickets, the box containing the corpse was
placed in charge of the defendant in reasonable time for
shipment on the train, and defendant agreed to ship it on
that train, and negligently failed to do so, or if defend-
ant had a reasonable time after receiving the corpse to
ship it on the morning train by the exercise of proper dil-
igence, and for the lack of such diligence it was not so
shipped, and its arrival at Slaughtersville was delayed on
account thereof, they should find for the plaintiff such
an amount in damages as would reasonably compensate
him for the trouble, inconvenience, and cost caused by the
delay, and they might also allow a reasonable amount for
any mental anguish the plaintiff suffered by reason of the

delay. But if he failed to inform the agents of the defendant as to the whereabouts of the corpse, or failed to notify them to put the same on the morning train for Slaughtersville, the jury should find for the defendant, unless the defendant's baggage agent assured him when he punched his ticket that defendant would look after putting the corpse on the train. The jury were also told to find for the defendant if, after receiving the box, its agents did not have a reasonable time, by the exercise of proper diligence, to put it on the train and ship it to Slaughtersville, and that they could in no event award anything to the plaintiff on account of the delay, inconvenience, or distress suffered by those who attended at the depot or graveyard, or who were prevented from attending the burial by the delay in the arrival of the corpse.

It is earnestly insisted for appellant that there is no property in a corpse (Keys v. Konkel, 119 Mich., 550, 78 N. W., 649, 44 L. R. A., 242, 75 Am. St. Rep., 423), and that mental suffering can not be recovered for in a case of this character. In Hale v. Bonner, 82 Tex., 33, 17 S. W., 605, 14 L. R. A., 336, 27 Am. St. Rep., 850, which was a suit for damages for delay in the shipment of a corpse, the court said: "We are unable to distinguish, in principle, this case from those in which recoveries against telegraph companies have been allowed for failure to deliver with promptness messages announcing the death or mortal illness of near relatives. Such cases are exceptional. As a rule, mental suffering is not an element of the damages which are recoverable for the breach of a contract, or in an action for tort, founded upon a right growing out of a contract. Ordinarily the object in sending a telegraphic message announcing the death or sickness of a relative is to afford the person to be benefited the solace that may result

from being present during the last illness of the relative, or attending his obsequies, as the case may be. The direct result of the failure to perform the duty of delivering the message being to deprive the person addressed of this solace, and to cause distress of mind, it is not unreasonable that he should have his compensation therefor." This case was followed in Wells, Fargo & Co.'s Express v. Fuller (Tex. Civ. App.), 35 S. W., 824. The right to recover for mental anguish for failure to deliver a telegram in the class of cases referred to was upheld in Chapman v. Telegraph Co., 90 Ky., 265 (12 R., 265) (13 S. W., 880), and after reconsideration this case was adhered to in a number of recent cases. In Telegraph Co. v. Vancleve (22 R., 53) (54 S. W., 827), the court said: "It is probably in accordance with the views of the majority of the State courts that mental anguish and injured feelings alone, and unaccompanied with physical injury, do not furnish ground for recovery. But in this State the rule has been announced otherwise. And so, likewise, a recovery in this class of cases can be had under the decisions in the States of Texas, Alabama, Indiana, Iowa, North Carolina, and Tennessee. It may be admitted that there are difficulties in the way of an exact measurement of such damages, but it does not seem to us that this is a sufficient reason why a negligent public carrier should escape with merely nominal damages. The same difficulty of accurately measuring such damages arises in cases of slander, breach of marriage contract, and in cases where mental suffering is accompanied with physical pain. If, as argued, the law does not deal generally with the feelings and emotions, it may be answered that here the parties themselves have contracted with respect to those very things, or at least have contracted with respect to those things which naturally

Louisville & N. R. R. Co. v. Hull.

affect the feelings and emotions." No sound distinction can be maintained between the Telegraph cases and this case. They rest upon the principle that damages naturally resulting from a wrongful act, and fairly within the reasonable contemplation of the parties, may be recovered. The logic of appellant's position, if followed, would lead to the conclusion that if it had lost this corpse, however negligently, no action could be maintained, at least for any substantial recovery. For if there is no property in a corpse, and there can be no recovery for mental suffering for the failure to carry and deliver it at the proper time, then for a very great wrong there would be practically no remedy. The tenderest feelings of the human heart cluster about the remains of the dead. The duty of Christian burial is one which loving hands perform as a privilege. An indignity or wrong to a corpse is resented more quickly than a wrong to the living, and, if mental suffering may be recovered for in the one case, it is hard to see why it may not be recovered for in the other. The damages for the loss of a corpse and those for the delay in delivering it differ only in degree. In actions for breach of a marriage contract, damages for mental suffering are allowed because these are the natural result of the defendant's wrong, and in no other way can proper compensation for it be had. The same rule must apply in actions for negligence in carrying a corpse, if the carrier is to be held to proper responsibility in this class of cases. We therefore conclude that there was no error in the instructions of the court.

The question of negligence was for the jury, and, while the evidence was very conflicting, we do not feel at liberty to disturb the verdict on the ground that it is against the evidence.

It is earnestly insisted that the damages are excessive, and that the plaintiff's counsel was guilty of misconduct in his closing argument to the jury. The plaintiff was treated with proper courtesy. There was only a delay in the interment of his wife's body from one afternoon until the next morning. The corpse remained at the baggage room from the time his train left until that evening, when it was put on the next train, and taken safely to Slaughtersville. There is no intimation that the condition of the corpse rendered a speedy interment necessary. Appellant was not treated with indifference, but the conductor seems to have done all that he could; and, on all the evidence, it is hard to escape the conviction that the damages awarded are palpably excessive, and given under the influence of passion or prejudice. In making the closing argument to the jury, the attorney for the plaintiff commenced reading from the defendant's answer in the case, informing the jury that the defendant had entirely changed its theory of defense since it had taken its depositions, and that the plaintiff was not prepared to meet fully its present theory. On the objection of the defendant that this was a matter for the court alone, the court requested the attorney to desist from this course. Thereupon he proceeded with his speech by beginning to state the substance of the answer, and, on the objection of the defendant, the court again required him to desist. He then said the issues had been changed by the defendant. On the objection of the defendant, the court directed him to confine his discussion to the facts of the case, and the law as embodied in the instructions of the court, whereupon he said to the jury: "We have nothing in our pleadings that we wish to conceal from the jury. We do not have to ask the court to conceal our pleadings for us." All this was ob-

Louisville & N. R. R. Co. v. Hull.

jected to, and the court refused to exclude it. It was improper. If it was desired to get before the jury the statements in the pleadings of the defendant, these pleadings should have been given in evidence on the trial, so that the defendant might have an opportunity to explain any inconsistency. When this was not done, they should not have been referred to in the concluding argument, which should have been confined to the evidence heard before the jury, and the law of the case as given in the instructions of the court. The attorney also said, in his concluding argument, this: "Time is precious with railroad companies sometimes. Mr. Hull telephoned me to meet him in Slaughtersville to come here. I started there, and found that the Texas train was an hour late, and I was told that they had stopped the train at Louisville to load a negro minstrel show. I do not know this. I was told this. Stopped that train, wasted precious time, loading Ward & Howes' or some other negro minstrel show. That train carried the mail, too. That shows how railroads do. They are exceedingly accommodating when there is any money in sight. They will hold a train an hour for a negro minstrel show, but it could not hold its train three minutes to get a corpse on the train. There was no money in that." Again he said: "I am told that when a railroad company gets into trouble they get all their witnesses together to take their affidavits. I am no railroad lawyer. I do not know this, but railroad lawyers tell me that they just have to do this to hold their witnesses to the mark,—to keep them from forgetting. Mr. Fisher and Mr. Summerhays doubtless gave their affidavits when this matter came up." Again he said: "If I had been at fault in this case, it was in asking so little damages. Mr. Hull and I visited Nashville to take deposi-

tions in the case. We were in the magnificent depot of defendant at Nashville (defendant's counsel suggested that defendant owned no depot in Nashville, to which he said that it is true he referred to the Central Station), which is more magnificent than Solomon's Temple. The ticket office there cost more than this court house, I reckon; and the doors of that station, more than plaintiff asked for his damages in this case, I imagine." All this the defendant objected to, and moved the court to exclude it from the jury, which was refused. It was improper for the attorney to go outside of the evidence heard by the jury, and the law of the case as given by the court. It was especially improper for him to state facts of his personal experience which had not been testified to, and were calculated to prejudice the jury against the defendant, or to swell the amount of the verdict. Considering the size of the verdict, in connecting with the argument of the counsel, we are clearly of opinion that a new trial should be granted.

It is certified in the bill of exceptions that it contains all of the evidence heard on the trial. This is conclusive, as the record is presented, that the bill contains all the evidence heard by the jury, although, from the grounds for new trial, it appears, complaint was made as to the reading of certain depositions, which are not incorporated in the bill of exceptions.

Judgment reversed, and cause remanded, with directions to grant appellant a new trial.