CASE 63.—ACTION BY HENRY HERTLE AGAINST ALICE RIDDELL, CAVE HILL CEMETERY AND OTHERS TO SECURE A MANDATORY INJUNCTION RE- QUIRING THEM TO REMOVE FROM THE CEM- ERTY LOT THE BODY OF A DOG BURIED THERE. —December 18.

# Hertle v. Riddell, etc.

Appeal from Jefferson Circuit Court; Chancery Branch; First Division.

SHACKELFORD MILLER, Judge.

From a judgment dismissing the petition, plaintiff appeals—Reversed.

1. Cemeteries—Rights of Lot Owners—Property in Lots.—While the purchaser of a cemetery lot does not acquire a fee simple title to the property, and must use it subject to and in accordance with the reasonable by-laws and rules of the cemetery corporation, he has a property right in the lot, which he is entitled to protect from invasion, whether by a trespasser or the unauthorized and illegal acts of the directors of the corporation.

2. Same—Remedies.—The owner of a cemetery lot may maintain

Hertle v. Riddell, etc.

·either trespass for damages or an injunction to protect nis
rights from invasion, either against a trespasser or the
cemetery corporation.

3. Same—Use of Adjoining Lot—Burial of Animals.—Where lots
in a cemetery controlled by a corporation were sold only in
accordance with the cemetery's rules and regulations, one of
which was that the cemetery was set apart for the burial of
the white race, and should be used for cemetery purposes
only, a lot owner was entitled to maintain a mandatory
injunction to compel the removal of the carcass of a dog,
which plaintiff's adjoining lot owner had permitted to be
buried in her lot.

4. Same—Nuisance.—The fact that the carcass of the dog was
well interred, and was not a physical nuisance, was imma-
terial.

O'NEAL & O'NEAL for appellant.

(No brief in the record.)

C. B. SEYMOUR for appellees.

SUMMARY.

1. The court will not by injunction require a party to commit
a nuisance.

2. The digging up the body of a dog which has been buried
two years would be the commission of a nuisance.

3. The burial of a dog on appellee's lot is not a nuisance.

4. The owner of a lot in a cemetery acquires only a license to
use the lot for burial purposes. No mere licensee has a cause of
action to restrain a nuisance on adjoining land; that right belongs
only to holders of estates in land. (Kavanaugh v. Barbour, 131
N. Y., 211; Ellis v. Kansas City R. R. Co., 63 Mo., 131; Greenleaf
on Evidence, section 470.)

8. The burial of the pet dog was no desecration.

6. There is no pretense that any inspection will disclose that
there has been a burial. There is no injury of which a chancellor
can take cognizance. (Cooley on Torts (3d Ed.), p. 713; High on
Injunctions, sections 742, 785; Ehrlick v. Comth., 102 S. W., 239.)

7. Appellant has no vested right in the rules of the cemetery.
(McGuire v. St. Patrick's Cathedral, 54 Hun (N. Y.), 207.)

OPINION OF THE COURT BY JUDGE BARKER—
Reversing.

The appellant, Henry Hertle, instituted this action
in the chancery branch of the Jefferson circuit court
for the purpose of securing a mandatory injunction
against Cave Hill Cemetery Company, Alice Riddell,
W. G. Hansbrough, and Ada Hansbrough, requiring
them to remove from the cemetery lot belonging to
Hansbrough the body of a dog which was buried
therein, as he alleged, in violation of the laws, rules,
and regulations governing the cemetery company, and
his rights as a lot owner therein.  His petition sets
forth that Cave Hill Cemetery Company is a corpo-
ration created by and under the laws of the State
of Kentucky, with power under its charter, among
other things, to ordain and put in execution such by-
laws, rules, and regulations for its government and
the management of its affairs as it may see proper,
not contrary to the laws of the Commonwealth of
Kentucky or of the United States, and that by its
charter it is expressly provided that all lands
acquired by the corporation shall be perpetually held
and used for the purposes of a ''rural cemetery;''
that long prior to the actions which are complained
of in the petition, and prior to the purchase of lots
therein either by the plaintiff or the co-defendants of
the cemetery company, the corporation adopted rules
and regulations for the government of the cemetery
and the management of its affairs, and among others
it adopted the following, to-wit: ''This cemetery is
set apart for the burial of the white race, and shall
be used for cemetery purposes only''—which is still
in full force and effect.  As a succinct statement of

the facts out of which grew this litigation, we copy
the following excerpt from the petition: ''He says
that, for a valuable consideration paid by him to the
defendant corporation, the defendant conveyed and
transferred to him on its books, and in accordance
with its charter, rules, and regulations, lot No. 104,
in section 1 of the cemetery, owned by defendant cor-
poration, and known as and called Cave Hill Ceme-
tery, which is in the county of Jefferson, and State
of Kentucky, and he has ever since been and now is
the exclusive owner of said lot and has the right to
bury the remains of his family and other persons
in said lot, and to have his own remains after death
buried in said lot; that since the purchase of his said
lot as aforesaid he has buried the body of his daugh-
ter in said lot, and her body is now buried in said lot,
and the residue of said lot is held by him as a place
for the burial of the remains of other members of
his family, and for the interment of his own remains;
that he purchased said lot and caused the remains
of his daughter to be buried therein long prior to
the wrongs and injuries complained of herein, and
relying on the charter, rules, and regulations of the
defendant that the lands owned and burial lots sold
by it would be used exclusively as a rural cemetery
and for the exclusive burial of the remains of white
persons, and that said lot and all the other lots owned
by said defendant corporation would be used exclu-
sively for said purpose.   He states that the defendant
Alice Riddell is now and was at the time of the wrongs
and injuries hereinafter complained of the owner of
lot No. 106, in section 1 of said cemetery, which she
purchased and held under and subject to the pro-
visions of the charter, rules, and regulations of said
defendant corporation; that the said lot of defend-

ant Alice Riddell adjoins and binds on the lot of this plaintiff; that the said defendant Alice Riddell, without the knowledge, consent, or approval of this plaintiff, or of any of the other lot owners in said cemetery, to the great shame, humiliation, and distress of this plaintiff and the other members of his family, permitted and authorized her codefendant W. G. Hansbrough and Ada Hansbrough to inter, and they did inter, in her said lot a dog, and the remains of said dog are now buried in said lot; that said wrongs were done without any authority from said cemetery company, and in violation of the rights of this plaintiff as a lot owner in said cemetery. He says that by said wrongful acts of said defendants which were made known and came to the knowledge of many of the citizens of Louisville and Jefferson county he and all the members of his family have been caused and will continue to suffer great mental distress, his said lot will be rendered of no value for any purpose, he will be compelled to remove from his said lot the remains of his daughter now buried therein, and will not be able to use said lot for burial or any other purposes; that the defendants in burying and permitting said dog to be buried on said lot committed and have ever since maintained a nuisance, which said nuisance by reason of its close proximity to the lot of this plaintiff caused to him peculiar and special injury and damage. He states that, as soon as he learned of the wrongs and injuries complained of herein, he demanded of the defendants and each of them that the remains of said dog should be removed from said lot, but the defendants refused to remove same, and notified this plaintiff that they intended to keep the remains of said dog perpetually in said lot. He states that the defendant corporation is willing,

as he is informed, to abate said nuisance by removing the remains of said dog, but asserts that it cannot do so without the consent of its codefendants, and for that reason refuses to abate said nuisance. He states that the continuance of said nuisance would produce great and irreparable injury to the plaintiff, and its commission has produced great and irreparable injury to the plaintiff; that he has no adequate remedy at law, and the defendants and each of them are doing and suffering to be done all of said acts, all of which are in violation of plaintiff's rights." A general demurrer was filed by the defendants to the petition and sustained by the court; whereupon the appellant (plaintiff below) refused to amend, and his petition was dismissed; and of this ruling he now complains.

The precise question involved here is stated in the briefs of learned counsel to be one of first impression, and their well-known learning and industry is a sufficient guaranty to us that the question has never been adjudicated before. The demurrer admits all of the well-pleaded allegations of the petition, and it therefore only remains to determine (1) what rights appellant as a lot owner in the cemetery possesses; (2) whether or not he can enforce by the processes of the law these rights as against an adjoining lot owner; and (3) whether the action of the defendants are violative of any legal right of the plaintiff. Cave Hill Cemetery is the principal burial place for the white people of the city of Louisville. It may be conceded at the outset that the purchaser of a lot from the defendant corporation does not become its owner in fee simple; that he has in it only the property right of using it for sepulture purposes, subject to the reasonable rules and regulations governing the

corporation; and it may be said that his property rights more nearly resemble that of an easement than a fee-simple title. But, whatever these rights are, they are property rights, and when violated the owner is as certainly entitled to all the remedies which the law affords, as if he owned a fee simple. The establishment and the maintenance of great cemeteries for the convenience of cities is an absolute necessity. Man naturally desires to provide a suitable place in which to bury his dead, and his reverence and love for his dead demands the establishment of a place where their bodies may repose in peace and dignity; where they will be safe and secure from trespassers, and where he may beautify their graves and mark their last resting place with suitable monuments to preserve their memory from oblivion.

It is a matter of common knowledge that in the principal cemeteries of large cities enormous sums of money are expended in adorning the grounds, in keeping the graves fresh and beautiful, and in erecting monuments upon which to record the virtues of the dead. A lot therefore in a cemetery, by whatever title it is held or denominated, is a valuable property, even when measured in money, and we will now examine some of the authorities bearing upon the subject, in order to ascertain what other jurisdictions and the text-writers have held with reference to the rights of lot owners in cemeteries to invoke the process of the law to restrain or remedy the invasion of their property rights. In the case of Roanoke Cemetery Co. v. Goodwin, 101 Va. 605, 44 S. E. 769, it was held that a purchaser of a lot in a cemetery, while he has the exclusive right to its use for the purpose of sepulture, holds it subject to the reasonable regulations and by-laws of the corporations, and that he

cannot exercise that absolute dominion over it, or
with regard to it, as can the owner in fee simple in
regard to his property. In the case of Wright v.
Hollywood Cemetery, 112 Ga. 884, 38 S. E. 94, 52 L.
R. A. 621, the owners of a lot in the defendant cor-
poration were held entitled to an injunction against
the corporation restraining it from preventing them
from burying a member of their family upon their lot.
In Hollman v. City of Platteville et al., 101 Wis. 94,
76 N. W. 119, 70 Am. St. Rep. 889, the owners of a
lot in a public cemetery were held entitled to maintain
an action of trespass against the city, which owned
the fee-simple title, for invading the lot and removing
the dead who were buried there. To the same effect
is Bessemer Land & Improvement Co. v. Jenkins, 111
Ala. 135, 18 South. 565, 56 Am. St. Rep. 26. In
Gowen v. Bessey, 94 Me. 114, 46 Atl. 792, the owner
of a lot in a cemetery, while not owning the fee
simple, had such property rights and possession as
entitled him to maintain an action of trespass against
a wrongdoer. In the case of Wormley v. Wormley,
207 Ill. 411, 69 N. E. 865, 3 L. R. A. (N. S.) 481, it
was said that it is well settled that a court of equity
will enjoin the owner of land dedicated to cemetery
purposes from defacing or meddling with graves on
the land, at the suit of any party having deceased
relatives or friends buried therein. In the case of
Meagher v. Driscoll, 99 Mass. 281, 96 Am. Dec. 759,
a judgment in damages against the superintendent
of a cemetery for wrongfully removing the body of a
child of the lot owner was upheld. In the case of
Mt. Moriah Cemetery Ass'n v. Commonwealth, 81 Pa.
235, 22 Am. Rep. 748, the Supreme Court of Penn-
sylvania held that, where a lot was sold to a colored
man for burial purposes, the corporation could not

afterwards change its by-laws and rules so as to exclude him and his family from sepulture therein, and mandamus was upheld against the corporation requiring it to permit the burial of the family of the owners of the lot. The rights of the owners of lots in cemeteries are thus defined in 6 Cyc. title "Cemeteries," section 8, p. 720: "Equity has jurisdiction to enjoin an unwarrantable disturbance or interference with a burial ground or the graves therein. An action of trespass quare clausum fregit may be maintained for breaking and entering a burial lot. One who is in the rightful possession of a cemetery lot, or who holds title to the usufructuary interest therein, may maintain an action against one who wrongfully trespasses upon it." In the case of Burke v. Wall, 29 Am. Rep. 316, 29 La. Ann. 38, it was held that where the plat of the cemetery at the time the owner purchased his lot showed an avenue or walkway leading up to the lot, and which was an easement subservient thereto, the owner of the lot is entitled to an injunction restraining the closing or discontinuing of the easement by the cemetery company. In Beatty, etc., v. Kurtz et al., 2 Pet. (U. S.) 566, 7 L. Ed. 521, it was held by the Supreme Court of the United States that the owners of burial lots, to which they had title by prescription, were entitled to the equitable remedy of injunction against the owners of the fee in the land to restrain them from removing the ashes of the dead. The court, in its opinion, speaking through Mr. Justice Story, said: "The next question is as to the competency of the plaintiffs to maintain the present suit. If they are proved to be the regularly appointed committee of a voluntary society of Lutherans in actual possession of the premises, and acting by their direction to prevent a disturbance of that

possession, under circumstances like those stated in the bill, we do not perceive any serious objection to their right to maintain the suit. It is a case where no action at law, even if one could be brought by the voluntary society (which it would be difficult to maintain), would afford an adequate and complete remedy. This is not the case of mere private trespass; but a public nuisance, going to the irreparable injury to the Georgetown congregation of Lutherans. The property consecrated to their use by a perpetual servitude or easement is to be taken from them, the sepulchers of the dead are to be violated; the feelings of religion, and the sentiments of natural affection of the kindred and friends of the deceased are to be wounded; and the memorials erected by piety or love, to the memory of the good, are to be removed, so as to leave no trace of the last home of their ancestry to those who may visit the spot in future generations. It cannot be that such acts are to be redressed by the ordinaary process of law. The remedy must be sought, if at all, in the protecting power of a court of chancery, operating by its injunction to preserve the repose of the ashes of the dead, and the religious sensibilities of the living.'' In People v. St. Patrick's Cathedral, 21 Hun. (N. Y.) 184. it was held that one who purchases a lot from a distinctively Roman Catholic cemetery takes it with the tacit understanding either that he is a Roman Catholic, and, as such, eligible to burial, or at least that he applies on behalf of those who are in communion with the church. And in Dwenger v. Geary, 113 Ind. 106, 14 N. E. 903, it was held that where land was conveyed as a burial place for members of the Catholic Church, and is taken in charge by officers of that denomination and consecrated according to its laws,

a lot owner has no right to inter therein a person not recognized by the church authorities as a Catholic. In the case of McGough v. Lancaster Burial Board, 21 Q. B. Div. 323, it was held that a lot owner had no right to erect a glass shade over the grave on his lot, which was contrary to the rules of the board. In the case of Clark v. Rahway Cemetery et al., 69 N. J. Eq. 636, 61 Atl. 261, in the Court of Chancery of New Jersey, it was held that a lot owner in a cemetery where the ground was dedicated for burial purposes only could maintain an injunction against the trustees, requiring them to keep the grounds in good order and repair, and to maintain the whole as a cemetery. In the opinion it is said: "Now, what is the object of this cemetery company? That is stated in its certificate: "The object and purpose of the corporation is to maintain and use the property acquired from the church and any property it may hereafter acquire * * * for cemetery purposes.' What are these purposes? Manifestly the decent care of the departed. The company itself is not only to use the property for burial purposes, but also to maintain it for those purposes. * * * It would seem plain that under the joint operation of the certificate of incorporation, of the by-laws, and of the deed itself the purchaser is not the isolated owner of a fee-simple absolute, of a lot over which he has entire control as such, but a person who has acquired a limited interest in a lot which is part of one connected whole; that whole being conducted, maintained, and managed by trustees for the benefit of himself and those similarly situated. His interest is in some degree that of a beneficiary of a trust, and I cannot imagine why he should not have the right to complain if that is being violated to his prejudice. Here the direct tendency of

the acts complained of is to imperil the lots remaining undisposed of, to depreciate the value of the cemetery lots as a whole, to prevent needed improvements, and to render access to complainant's lot more difficult.''

From the foregoing authorities, we deduce these principles, which we think are sound: (1) That while a purchaser of a lot in a cemetery company such as the one at bar does not acquire the fee-simple title to the property, and must use it subject to and in accordance with the reasonable by-laws and rules of the managers of the company, yet he has a property right in his lot which the law recognizes and protects from invasion, whether it be by a mere trespasser or from the unauthorized and illegal acts of the directors of the corporation itself. (2) That the lot owner's remedy is commensurate with his rights, and he may maintain either trespass for damages or injunction, to enforce and uphold his rights whenever those remedies may be necessary, and this either against the trespasser or the company itself. The question, then, recurs: Did the act of the adjoining lot owners in burying on their lot the body of their dead dog violate the property rights of the plaintiff? And, if so, is the wrong such an one as equity will remedy by a mandatory injunction? The answers to these questions must depend upon the contracts which arose between the parties when the lots were purchased. Into the contract of purchase of a lot in a cemetery must be read the charter and by-laws of the company, and neither the owner nor the corporation can violate the fundamental purpose for which the corporation was organized and the property dedicated. One who purchases a lot in a Catholic cemetery may not afterwards violate the rule of the church by giving sepulture to a member of the Masonic order, although the

contract of purchase is silent on the subject. People
v. St. Patrick's Cathedral; Dwenger v. Geary, supra.
Nor may a cemetery company sell a lot to a negro
and afterwards adopt a by-law which forbids its use
for burial purposes to the negro race. Mt. Moriah
Cemetery Company v. Commonwealth, supra. When,
therefore, one contemplates the purchase of a lot
upon which to bury his family, in order that he may
certainly obtain what he desires, he must look to the
charter and by-laws of the corporation, and having
done this, they become a part of his contract of pur-
chase. When the plaintiff and the defendants pur-
chased the lots they now own in Cave Hill Cemetery,
its charter dedicated it as a cemetery, and its by-laws
contained the guaranty that "this cemetery is set
apart for the burial of the white race, and shall be used
for cemetery purposes only." With these provisions
in their contracts, with what grace may the defend-
ants demand the right to turn their lot into a place
for the burial of dogs? Or why shall the plaintiff
be not heard to complain of this gross violation of the
charter and by-laws of the cemetery company? The
appellees and the chancellor answer that it was a
small dog, that it was well buried, and its presence
under these conditions does not create a nuisance. If
the question be whether its burial creates a physical
nuisance, this view may be correct. But is there not
much more involved in the question than a mere
physical nuisance? A member of the negro race well
buried is, from the standpoint of physical nuisance,
no more so than the body of one of the Caucasian
race; yet no one will deny that, if the privilege of
burial in it were extended to the negro race, the value
of Cave Hill as a cemetery for white people would
be at once entirely destroyed. A lot which is now

worth in money as much as $500 would not, after such
a change in the by-laws, be worth $50. Property
which in the aggregate may now be worth millions,
would then be rendered practically worthless. It does
not aid the question to say that this is an unreasoning
prejudice. For the purposes of the argument, this
may be admitted to be true. It is none the less true,
however, that the money value of this cemetery prop-
erty is based upon the confidence of the white citizens
of Louisville that their prejudices in this regard will
be safeguarded both by the corporation and the law.
If this is true in regard to members of another race,
is it not true to a greater degree in regard to the
bodies of the lower animals? If the body of a dog
may find sepulture on the lot of its owner in Cave
Hill Cemetery, why might not the owner of a horse
or bull, or donkey, also bury his favorite on his lot
therein, if his fancy should take this freakish direc-
tion? Where would, or could, the line be drawn, if
not at the body of a dog? We believe that the average
man would consider it an outrage on his rights as a
lot owner in a cemetery if the owner of the adjoining
lot should inter the carcass of a dog beside the lot
which holds the graves of his family. It would be
useless to tell him that, when the bodies were resolved
back into their original elements, chemically there is
no difference between them. We do not reason about
the dignity of our dead either according to the laws
of logic or of chemistry. Sorrow, bending over the
graves of her loved ones, smiles through her tears
and accepts the assurance of Faith that they are
not dead, but sleeping. It is for this reason that we
beautify the grounds in which they repose, guard
their graves from vandalism, and protect their dig-
nity from desecration. This may be only senti-

mentality; but, if these sentiments are outraged, our pain is none the less real. The burial place of the dead has among all nations and in all times been deemed sacred, and our Anglo-Saxon forefathers called it "God's Acre." It is protected by stringent laws from violation, and its willful desecration is universally regarded as exceptionally wicked. Man does not regard the last resting place of his dead as simply a place where they may be thrust from sight and forgotten. To him their ashes are sacred; and the memory of their virtues constitutes a foundation both for inspiration and courage. It was in this spirit that a great patriot, when our country was in direst peril, appealed to the mystic chords of memory stretching from every battle field and patriot's grave to every living heart and hearthstone in the land to swell the chorus of the Union when touched by the better angels of our nature. The sentiments and prejudices of man are a part of him. He does not often control them. As a rule they control him. He has a right to protect his lawful sentiments and prejudices from violation or outrage by contracts based upon legal consideration, and, when they are thus safeguarded, no reason is perceived why these contracts may not be enforced as any other contracts may be.

When the appellant purchased his lot in Cave Hill Cemetery by a large outlay of money, it was to secure a place of sepulture for himself and family in a cemetery dedicated to the burial of white people only, and, while some may criticise this spirit of exclusiveness, surely none can successfully deny his right to that for which he paid. On the other hand, the adjoining lot owners purchased their lot subject to the charter and by-laws of the cemetery company, and they have no right to put it to any use which violates the charter

and by-laws of the cemetery company. Each is entitled to what he purchased—no more, no less. The appellant not only has the right to the actual use of his lot for the purpose for which it was sold to him, but he has also in common with all the other lot owners the right to have the cemetery maintained as a whole for the purposes for which it was dedicated, and is entitled to an injunction against the trustees of the corporation and the adjoining lot owners to prevent these rights from being violated. Clark v. Rahway Cemetery, 69 N. J. Eq. 636, 61 Atl. 261.; Burk v. Wall, 29 La. Ann. 38, 29 Am. Rep. 316; Beatty v. Kurtz, 2 Peters (U. S.) 566, 7 L. Ed. 521.

For these reasons, the judgment is reversed, with directions to overrule the demurrer to the petition, and for further procedure consistent with this opinion.

Petition for rehearing by appellant overruled.