# North East Coal Co. v. Pickelsimer et al.

## Same v. Wells.

(Decided Feb. 20, 1934.)

12

E. C. O'REAR, FRED HOWES and KIRK & WELLS for appellants.

W. J. WARD for appellee Noah Wells.

J. L. HARRINGTON and J. B. CLARK for appellees Laura Pickelsimer and another.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

These appeals involve the same questions of law and substantially the same facts.

About the year 1892, Nerva Crider and Nettie Crider, the mother and sister of Laura Pickelsimer and Emma Mutts, died, and were buried on John's creek, or Hyden's branch, Johnson county, Ky., at a place used as a graveyard for people residing in this immediate vicinity, including the family and friends of William Hyden, who, at that time, owned the farm on which it was located. The farm is now owned by Lewis Butcher.

About 24 years ago George Wells, a son of Noah Wells, was also buried in this graveyard.

About the year 1900, William Hyden, the owner of the fee in the farm on which the graveyard was located, conveyed the coal and other minerals thereunder to John C. C. Mayo, and by mesne conveyances the title was acquired by the North East Coal Company. It opened mines thereon in 1916. The coal was mined on what is commonly known as the "re-treat plan;" i. e., the entries were first driven to the farthest extent of the mineral boundary; rooms and pillars were mined on the return toward the mouth. Before the North East Coal Company acquired title to the lease, an entry and an air course were driven under one corner of the graveyard. At the time of the happening of the occurrences herein involved, the graveyard contained about 75

graves, only about one-half dozen of them were marked, or could be located by "markers." Only about a dozen were so cared for as to indicate their existence. The lease under which the North East Coal Company held title, and mined coal thereunder, contained no reservation of the graveyard or notice of its existence. However, in mining coal under it, it left intact 75 per cent. of the area of coal thereunder, which still remains unmined. The graveyard is located on the crest of a hill near a creek. The coal was mined around the 75 per cent. which was left immediately under the graveyard. On the completion of the mining operation, the mouth of the mine was closed, and some time thereafter a "hill seam," or a natural crevice in the stratum or a natural separation of the stone formation overlying the territory mined, which was 150 feet below the surface, appeared, producing on the surface different openings, which extended at some points from the top of the soil to the bottom of the opening of the sandstone stratum. The bottom of the "hill seam," or natural cleavage of the sandstone stratum, was observable at different points in the graveyard. Without particularizing the locations of the openings or cracks of the surface of the graveyard or their dimensions, we shall consider them as they relate only to the graves of Nerva or Nettie Crider and George Wells. The evidence as to the "hill seams" or cracks, as they concern other graves, is not only immaterial, but not admissible in the actions of Laura Pickelsimer and Emma Mutts and Noah Wells; the only issue in their respective cases was the nature and extent of the seams or cracks as they affect the graves of Nerva Crdier and Nettie Crider and George Wells. Cincinnati, N. O. & T. P. R. Co. v. Perkins, 204 Ky. 334, 264 S. W. 758. The evidence of the injury to the graves of others or of Nerva Crider and Nettie Crider was inadmissible for, or in favor of, Noah Wells and vice versa.

At the date of the deaths of Nerva Crider and Nettie Crider, Laura Pickelsimer was six months old. Their graves had been pointed out to her. She was permitted to say their graves were "just a hole in the ground now." "There is a crack in the graveyard, it is no shape for anyone to be buried there now;" and she could not now be buried there because of the "condition of the burial ground." No monument, tombstone, or other marker was at the grave of either the mother or

sister. She claims their graves, where they had been pointed out to her, were "down in that crack," and that "she would not want to be buried there." For the last 20 years she had seldom visited the graves of her mother and sister, and had not visited them for the past 3 years, for the reason she "had a bad show to get there," though she only resided 7 miles from the burial ground. The sister, who joined her in her action, lived in California, and had only been in Kentucky twice in 23 years; the last visit being 7 years ago when she visited her mother's grave. The sister is 3 years older than Mrs. Pickelsimer. They were the only living children of their mother, and their father was dead. Lewis Butcher testified he was present when Nerva Crider was buried, and helped bury her. He knew where her grave was located, and remembered Nettie Crider as a child. He further testified the grave of Nerva Crider "had gone down," "sunk down," "broken up," and there is a place he could not see the bottom. He had seen other people "put long poles down in there;" and "they said they could not touch the bottom." This witness was permitted to describe the cracks in the surface throughout the graveyard, which, in some places, had filled up. He stated a coffin could be seen at one time, but the crack in the earth exposing it had filled up. He did not identify or undertake to say it was the coffin in which either Nerva or Nettie Crider was buried.

Noah Wells was permitted to describe the cracks in the surface, as they appeared at different points and places in the graveyard. When asked to describe them, as they concerned the grave of his child, his answer was, "There is a crack there at the head of the grave and another one there is 18 inches of the foot of the grave and then the grave is sunk down." There was no marker or monument to his child's grave. It was 10 days old at its death, and no care or attention had been given to its grave since its burial. He had not filled it up since the child was buried.

The graveyard is ragged, uncared for, unkept, and no attention has been given it or the graves therein by the relatives of those who were buried in it.

Wells does not claim, nor state, that any crack in the surface appeared in the grave of his child, or near it, except at the edge and the end, and neither the appearance nor the dimension of which is given by the

witnesses. Noah Wells, Laura Pickelsmier, and Emma Mutts were not parties to the lease under which the North East Coal Company mined the coal in the vicinity of the graveyard. There were no consensual relations between them and the North East Coal Company; therefore the principles stated in Griffin v. Fairmount Coal Co., 59 W. Va. 480, 53 S. E. 24, 2 L. R. A. (N. S.) 1115; Kuhn v. Fairmount Coal Co. (C. C. A.) 179 F. 191, are not applicable and controlling. Noah Wells, as the father of George Wells, and Laura. Pickelsimer and Emma Mutts, as the only surviving daughters of Nerva Crider, and the only heirs at law of Nettie Crider, their parents being dead, while they were not the owners of the feé or of any interest in the soil where their deceased relatives were buried, were in that character of possession of the soil where their relatives were buried as entitled them to prosecute their respective actions for the interruption ..or desecration of the graves of their relatives or the interference with their dead bodies. Hook v. Joyce, 94 Ky. 450, 22 S. W. 651, 15 Ky. Law Rep. 337, 21 L. R. A. 96; Hertle v. Riddell, 127 Ky. 623, 106 S. W. 282, 32 Ky. Law Rep. 477, 15 L. R. A. (N. S.) 796, 128 Am. St. Rep. 364.

In Louisville Cemetery Ass'n v. Downs, 241 Ky. 773, 45 S. W. (2d) 5, 6, it was written:

"A recovery may be had by the next of kin or the surviving spouse for an unwarranted interference with the grave of a deceased, or for the infliction of an injury to a corpse, if either be done [a] maliciously, [b] or by gross negligence, [c] or wantonly, i. e., with a reckless disregard of the rights of another [Louisville & N. R. R. Co. v. Hull, 113 Ky. 561, 68 S. W. 433, 24 Ky. Law Rep. 375, 57 L. R. A. 771], [d] or for an unlawful or secret disinterment or displacement thereof [Ky. Stats. secs. 466, 1335], or [e] an action of trespass quare clausum fregit may be maintained by the holder of the title, or the person in possession, of the lot on which a grave is located [Cooley on Torts, 239, 240; 1st Blackstone's Commentaries, 429; Hook v. Joyce, 94 Ky. 450, 22 S. W. 651, 15 Ky. Law Rep. 337, 21 L. R. A. 96], or [f] for the removal of a body from one grave to another by those in authority and control of the cemetery or burial ground, without notice, or an opportunity, to him who in law is entitled to be present, if he desires, before its re-

moval. 1st Washburn on Real Estate, sec. 33; Kincaid's Appeal, 66 Pa. 411, 5 Am. Rep. 377; Partridge v. First Ind. Church, 39 Md. 637; Bessemer Land & Improvement ·Co. v. Jenkins, 111 Ala. 135,. 18 So. 565, 56 Am. St. Rep. 26.''

Streipe v. Liberty Mutual Life Ins. Co. et al., 243 Ky. 15, 47 S. W. (2d) 1004.

The term ''next of kin,'' in this character of case, means those who inherit from the deceased, the fee, interest, or easement in the soil containing the dead·body, under the statute of descent. Thompson on Negligence, vol. 7, sec. 748, page 891; Mount v. Tremont Lbr. Co., 121 La. 64, 46 So. 103, 16 L. R. A. (N. S.) 199, 126 Am. St. Rep. 312, 15 Ann. Cas. 148. In Pettigrew v. Pettigrew, 207 Pa. 313, 56 A. 878, 880, 64 L. R. A. 179, 99 Am. St. Rep. 795, the rule stating in whom the right of action lies is aptly stated thus:

''Subject to this general result, it may be laid down: First. That the paramount right is in the surviving husband or widow, and, if the parties. were living in the normal relations of marriage, it will require a very strong case to justify a court in interfering with the wish of the survivor. Secondly. If there is no surviving husband or wife, the right is in the next of kin in the order of their relation to the decedent, as children of proper age, parents, brothers and sisters, or more distant kin, modified, it may be, by circumstances of special intimacy or association with the decedent. Thirdly. How far the desires of the decedent should prevail against those of a surviving husband or wife is an open question, but as against remoter connections, such wishes especially if strongly and recently expressed, should usually prevail. Fourthly. With regard to a reinterment in a different place, the same rules should apply, but with a presumption against removal growing stronger with the remoteness of connection with the decedent, and reserving always the right of the court to require reasonable cause to be shown for it.''

It is universally agreed that the right of action of the ''next of kin'' is a family right, and daughters and sons or brothers and sisters may maintain one action and not a separate action by each one of them. Although this right of action lies in them, the owner of the fee

may maintain either an action for trespass for damages or invoke injunctive relief against a trespasser. Hertle v. Riddell, supra.

The North East Coal Company had the undoubted right, under its lease from the owner in fee of the land upon which the graveyard was situated, to mine the coal thereunder, subject to the liability for damages to the owner of an easement; in this case, Noah Wells, as father of George Wells, and Laura Pickelsimer and Emma Mutts, as the next of kin of their mother and sister, for the subsidence; i. e., the sinking or cracking of the surface from the mining directly thereunder, or from under the lateral support of the surface of the graveyard. In West Ky. Coal Co. v. Dilback, 219 Ky. 783, 294 S. W. 478, 479, it was written:

"The right to mine is subservient to the right of the surface owner to have the surface maintained in its natural state free from subsidence or partings of the soil, and this right of support is absolute and not dependent upon any question of negligence. But this doctrine ought not to be extended any further than applying it to the surface above the mining operation."

To the same effect see Jones Coal Co. v. Mays, 225 Ky. 365, 8 S. W. (2d) 626; North-East Coal Co. v. Hayes, 244 Ky. 639, 51 S. W. (2d) 960.

Applying the principles stated in these cases to the proven facts, Noah Wells, for the break or crack in the surface of the graveyard in the vicinity of the grave of his son, or which may interrupt or hinder the way of ingress and egress to and from it, and Laura Pickelsimer and Emma Mutts, for those in, over, or about the grave of their mother and sister, which interfere with ingress or egress to or from their graves, are entitled to recover of the North East Coal Company the damage respectively sustained as the direct and proximate result thereof, the measure of which is the reasonable cost of restoration of the surface of the graves of their respective relatives, including ways of ingress and egress, to the natural condition of the surface, making it as commodious as it was in its natural condition, the same being repairable or curable with reasonable effort and expense. H. B. Jones Coal Co. v. Mays, supra; North-East Coal Co. v. Hayes et al., supra; Berkley v. Berwind-White Coal Mining Co., 229 Pa. 417, 78 A. 1004;

Rabe v. Shoenberger Coal Co., 213 Pa. 252, 62 A. 854, 3 L. R. A. (N. S.) 782, 5 Ann. Cas. 216; Donk Bros. Coal & Coke Co. v. Slata, 133 Ill. App. 280. Wells, Pickelsimer, and Mutts, in their pleading and presentation of their respective cases, sought, and the circuit court in his instructions to the jury authorized, damages for mental suffering which are allowable "for unwarranted interference with the grave of the deceased, or for the infliction of an injury to a corpse, if either be done, maliciously, wantonly, or for an unlawful or secret disinterment or displacement thereof," or a violation of section 1335, Ky. Stats., or for the removal of a body from one grave to another "without notice or an opportunity to the one in law, who is entitled to be present, if he desires, before its removal."

The grave of George Wells was not disturbed by the break in the surface of the graveyard. Nor was the body of the child thereby exposed. There was not even a displacement of the body, nor was it otherwise interrupted or hurt. When the ground cracked and opened within the area of the graveyard, or the soil and the rock parted, as some of the witnesses describe the same, the body moved with the soil and remained locus in quo; and, if markers had been erected to the grave, it would have been as easy to locate it after the seams or cracks appeared in the soil as it was before the occurrence.

As to the remains of Nerva Crider, some of the witnesses declare the seam in the soil and the rock appeared where her grave was located; but no one of them claimed either the container or the body was visible or observable. And, when the soil parted, thus making the opening described by the witnesses, both the container and the body remained embedded, and moved with the soil, uninterrupted, undisturbed, and sustained no hurt or injury.

As to the container with the body of Nettie Crider the evidence shows the same was buried near the body of her mother. It is not shown there was any interruption or disturbance of it by the parting of the soil or the rock beneath.

It is agreed generally by the courts that mental suffering is not an element of damages for an indignity or wrong unaccompanied with physical injury. Reed v. Ford, 129 Ky. 471, 112 S. W. 600, 33 Ky. Law Rep. 1029, 19 L. R. A. (N. S.) 225; City Transfer Co. v. Robinson,

12 Ky. Law Rep. 555; Covington St. Ry. Co. v. Packer, 9 Bush, 455, 15 Am. Rep. 725; McGee v. Vanover, 148 Ky. 737, 147 S. W. 742, Ann. Cas. 1913E, 500; Chesa- peake & O. R. Co. v. Robinett, 151 Ky. 778, 152 S. W. 976, 45 L. R. A. (N. S.) 433; Gardner v. Cumberland Tel. Co., 207 Ky. 249, 268 S. W. 1108. We have de- parted from this rule in two instances; one of which is an action for damages for breach of a contract to trans- mit a message where one is deprived of being present at the bedside of a near relative before death or from at- tending the funeral after death; Combs v. So. Bell Tel. & Teleg. Co., 238 Ky. 341, 38 S. W. (2d) 3, and authori- ties cited; the other is an action against a common car- rier to recover damages for the delay in the shipment of a corpse, Louisville & N. R. Co. v. Hull, 113 Ky. 561. 68 S. W. 433, 24 Ky. Law Rep. 375, 57 L. R. A. 771. The reason for permitting damages for breach of contract in either case is, there can be no physical injury, and, unless damages may be recovered for the breach, the party making it or for whom it was made will be with- out a remedy to protect his contractual and legal rights.

There are other unrelated exceptions to this recog- nized rule, such as an action for breach of marriage con- tract and certain cases of willful wrong affecting the liberty or personal security, character or reputation, or domestic relations of the person injured. In such cases mental suffering is the ordinary, natural, and proximate consequence of the wrong complained of. See Gardner v. Cumberland Tel. Co., supra.

While a dead body is not property in the strict sense of the law, yet the right to bury a corpse and to preserve it is a legal one which the courts will recognize and protect, and any violation of it will give rise to an action for damages. Hockenhammer v. Lexington & E. R. Co., 74 S. W. 222, 224, 24 Ky. Law Rep. 2383.

It remains to be determined whether Noah Wells, as the father of George Wells, Laura Pickelsimer and Emma Mutts, as the daughters of Nerva Crider and the sisters of Nettie Crider, have shown an actionable in- jury, entitling them to recover for mental anguish on the facts presented. The North East Coal Company, when mining coal, leaving 75 per cent. of the vertical, but withdrawing the lateral, support from the grave- yard, causing the collapse or sinking of the lateral sur- face, and thereby producing seams in the rock and the

parting of the soil within the area of the graveyard, yet there was in fact no physical injury thereby done to the remains of the relatives of either Wells, Pickelsimer, or Mutts; no indignity toward, or exposure of, the remains or the containers in which they were deposited; in fact, no actual hurt to, or displacement of, either the remains or the containers.

If no more physical injury had been done to the plaintiffs than the evidence discloses was done to the remains of their relatives, they could not maintain an action for the mental suffering thereby caused, because of the generally accepted rule that compensation for mental suffering not connected with physical injury is not recoverable. If the relatives of these plaintiffs had been alive and no more injury had been done them than the evidence discloses there has been done to their remains, no action could be maintained by them against the North East Coal Company for their several mental sufferings. As was said by this court in Hockenhammer v. Lexington & E. R. Co.: ''We see no reason why the same rule should not be applied to a corpse in a case like this as would be applied if the child were alive and no injury done'' to either of them. To allow the action to be maintained in so far as it seeks compensation for mental suffering would be to make another exception to well-settled legal principles, not warranted by any precedent pointed out in the briefs of the parties or that we have found. There is no inconsistency or conflict in this view with those we have expressed in Louisville & N. R. Co. v. Hull, 113 Ky. 561, 68 S. W. 433, 24 Ky. Law Rep. 375, 57 L. R. A. 771; Louisville & N. R. Co. v. Hall, 219 Ky. 528, 293 S. W. 1091; Meyers v. Clarke, 122 Ky. 866, 90 S. W. 1049, 93 S. W. 43, 28 Ky. Law Rep. 1000, 29 Ky. Law Rep. 393, 5 L. R. A. (N. S.) 727; Louisville Cemetery Ass'n v. Downs, 241 Ky. 773, 45 S. W. (2d) 5; Streipe v. Liberty Mutual Life Ins. Co., 243 Ky. 15, 47 S. W. (2d) 1004; nor with sections 1335 and 1336, Ky. Stats. The principles denying recovery of compensatory damages herein are in complete harmony with Reed v. Ford, 129 Ky. 475, 112 S. W. 600, 33 Ky. Law Rep. 1029, 19 L. R. A. (N. S.) 225, and other cases, supra. In Louisville Cemetery Ass'n v. Downs, we assembled the cases of this kind in which damages are recoverable, and determined that the facts involved in it were such as to entitle the plaintiff to damages for mental suffering. It does not follow that, because we

therein held the plaintiff was entitled to compensatory damages for mental anguish, in every case involving a corpse or a grave the plaintiff is entitled to such damages.

The jury awarded to Pickelsimer and Mutts the sum of $8,000, of which the court remitted $4,000 and entered a judgment accordingly. For Wells, a verdict of $800 was returned by the jury. It is argued the verdict in each case is excessive. Since it is our view the criterion of damages herein is the reasonable cost and expenses of restoring the graves and the way of ingress and egress to and from them, and the court erred in instructing the jury otherwise, the question of excessive damages becomes immaterial.

The judgments are reversed, with directions to award the North East Coal Company a new trial in both cases, and for proceedings consistent herewith.