No. 33,594

BERTHA ALDERMAN, *Appellant,* v. SHERMAN FORD and W. S. HUDIBURG, *Appellees.*

(72 P. 2d 981)

Opinion filed November 6, 1937.

*Walter S. Keith,* of Coffeyville, for the appellant.

*Richard L. Becker,* of Coffeyville, and *Jay W. Scovel,* of Independence, for the appellees.

The opinion of the court was delivered by

SMITH, J.: This was an action for money. Judgment was for defendants, sustaining a demurrer to the petition on the ground that it did not state facts sufficient to constitute a cause of action. Plaintiff appeals.

The petition alleged that one Alderman had been the husband of plaintiff and that he died December 20, 1935; that one of the defendants, who was a surgeon, and the other defendant, who was not a surgeon, "did cut open and cut into the dead body of Arthur Alderman, and did then and there cut into and probe into, and look into and inspect and study the body and parts of the dead body of Arthur Alderman, all on the 20th day of December, 1935, and at and

within Montgomery county, Kansas, and all without the knowledge, presence or consent of plaintiff." The petition then alleged that plaintiff had the right to dispose of the corpse of her dead husband and had the exclusive right of sepulchre and had the exclusive right to the possession of the dead body of Alderman in the same condition it was when the breath of life left it; that plaintiff at the instance of defendants was denied a view of the body of Alderman until it was clothed and in its coffin; that after the body of Alderman had been interred one of the defendants told her that he had the body cut open in order to see whether he would be liable for his death. The petition then stated that plaintiff "suffered great mental suffering, and great injury to her feelings, and was in mental anguish, on account of the wrongful and tortious acts of the defendants herein in mutilating the corpse." The petition then alleged that plaintiff had been damaged on account of these violated rights by defendants.

Defendant Ford demurred to this petition on the grounds: First, that the petition did not state facts sufficient to constitute a cause of action; second, that the petition showed on its face that it was barred by the statute of limitations, the action not having been commenced within one year from the date of the cause of action, if any arose.

Defendant Hudiburg demurred on the first ground stated above.

These demurrers were sustained generally and plaintiff was given twenty days in which to amend. Plaintiff stood upon the allegations in the petition. Hence this appeal.

The question argued in this court by both parties is whether the petition stated facts sufficient to constitute a cause of action. It will be noted that the petition did not allege that plaintiff suffered any physical injury. She alleged mental pain and suffering only.

Defendants argue that on this account she cannot recover in this action. They rely on the rule that in this state one cannot recover for mental anguish and injury to feelings unless in connection therewith there is a physical injury or there is malice or wantonness shown. (See *City of Salina v. Trosper,* 27 Kan. 544.)

At the outset it may be stated that this is not a case where recovery depends on negligence. The right of plaintiff, the invasion of which she claims enables her to recover here, is the right to receive the dead body of her late husband in the condition in which it was when he died so that she could give it decent burial. This right has been recognized by statute in this state. It is provided that the un-

claimed dead body of any criminal or other person may be delivered to a medical college for purposes of study, but not if the deceased during his last sickness requested to be buried, and not if any relative or friend asked to have the body buried, and the body may never be turned over to a school until the person in charge of deceased at the time of his death shall have made diligent search for relatives and friends of deceased and no response has been received. (See G. S. 1935, 65-901 to 65-905.) This statute does not apply to this case because the dead body here was not that of a criminal or unclaimed person. It indicates, however, that the legislature recognized the right of the next of kin to bury the dead body of a relative. There is a statute that makes it a crime to remove a dead body from the place of interment for the purpose of selling it or for mere wantonness or mischief. There is an exception to this statute where the disinterment is done with the consent of the "near relations" of deceased. (See G. S. 1935, 21-911 to 21-914.) This statute does not cover a case of unauthorized autopsy such as we have here. It is referred to here mainly because it is indexed in our statutes under the head of "Crimes against public morals and decency." We do not consider that it would add anything to this opinion to discuss the question of whether the right the next of kin have in a corpse is a property right. Others have spoken on this subject in a more fitting language than is ours to command. See Jackson on The Law of Cadavers, page 170, which says:

"Questions which relate to the custody and disposal of the remains of the dead do not depend upon the principles which regulate the possession and ownership of property, but upon the considerations arising partly out of the domestic relations, the duties and obligations which spring from family relationship and the ties of blood; partly out of the sentiment so universal among all civilized nations, ancient and modern, that the dead should repose in some spot where they will be secure from profanation; partly out of what is demanded by society for the preservation of the public health, morality and decency, and partly often out of what is required by proper respect for and observance of the wishes of the departed themselves." (See, also, *Fox v. Gordon*, 16 Phila. 185.)

The question of the right of the next of kin of a deceased person to recover for an unauthorized autopsy on the body of the deceased was considered in *Woods v. Graham*, 140 Minn. 16, 167 N. W. 113. There the action was brought by a mother to recover damages for an autopsy on the body of her daughter without the mother's consent. The answer of defendant admitted the performance of the

autopsy without the consent of the mother, but alleged that the autopsy was made in good faith for the purpose of ascertaining the cause of death, and alleged that the autopsy was in a decent manner and no incisions were made that were not necessary in order to ascertain the cause of death. The plaintiff demurred to this answer and the trial court sustained the demurrer, and the defendant appealed. The defendant raised the question we have here. The court affirmed the judgment on the authority of *Larson v. Chase*, 47 Minn. 307, 50 N. W. 238. That was an action for damages for the unlawful mutilation of the body of plaintiff's deceased husband. The only damages alleged were mental suffering and nervous shock. In support of his demurrer, which was overruled by the trial court, the defendant argued that a dead body was not property and that mental anguish and injury to the feelings, independent of any actual tangible injury to person or property, constituted no ground for action. The court first dealt briefly with the history of the development of the law from the time when the ecclesiastical courts had jurisdiction of the custody of dead bodies and kindred matters up until the time when the American colonies repudiated the ecclesiastical law and left the temporal courts the sole protector of the dead and of rights of the living in their dead. The court then said:

"This has been accomplished by a process of gradual development, and all courts now concur in holding that the right to the possession of a dead body for the purposes of decent burial belongs to those most intimately and closely connected with the deceased by domestic ties, and that this is a right which the law will recognize and protect." (p. 309.)

The court then said:

"We have no doubt, therefore, that the plaintiff had the legal right to the custody of the body of her husband for the purposes of preservation, preparation and burial, and can maintain this action, if maintainable at all." (p. 309.)

We choose to follow the above rule, both because it is based on the tenets and practice of a Christian people, and for the further reason that it accords with what our legislature has undoubtedly thought was the desire of our people when it enacted the statutes mentioned.

The court, in considering further the rights of the wife, said:

"But whatever may have been the rule in England under the ecclesiastical law, and while it may be true still that a dead body is not property in the common, commercial sense of that term, yet in this country it is, so far as we know, universally held that those who are entitled to the possession and custody of it for purposes of decent burial have certain legal rights to and in it." (p. 310.)

The court further said:

"The important fact is that the custodian of it has a legal right to its possession for the purposes of preservation and burial, and that any interference with that right, by mutilating or otherwise disturbing the body, is an actionable wrong. And we think it may be safely laid down as a general rule that an injury to any right recognized and protected by the common law will, if the direct and proximate consequence of an actionable wrong, be a subject for compensation. . . . Wherever the act complained of constitutes a violation of some legal right of the plaintiff, which always, in contemplation of law, causes injury, he is entitled to recover all damages which are the proximate and natural consequence of the wrongful act. That mental suffering and injury to the feelings would be ordinarily the natural and proximate result of knowledge that the remains of a deceased husband had been mutilated, is too plain to admit of argument." (pp. 310, 312.)

The above case drew an analogy between cases of the sort we are considering and cases of assault without physical violence, cases of false imprisonment, and actions for seduction. This court has considered such cases. In the case of *Anthony v. Norton*, 60 Kan. 341, 56 Pac. 529, this court held that a mother could recover damages for the seduction of her twenty-five year old daughter even though no loss of services was shown. The basis of recovery was placed altogether on the mental anguish of the parent over the fall of the daughter from virtue.

In *Lonergan v. Small*, 81 Kan. 48, 105 Pac. 27, the plaintiff sued a storekeeper for assault. It appeared that plaintiff was in the store of defendant and that defendant snatched a box from under the arm of plaintiff under such circumstances as to constitute an assault and at the same time held plaintiff out to the bystanders as a shoplifter and thief. The jury awarded the plaintiff damages. In answer to special questions the jury found that plaintiff did not suffer any bodily injuries from the assault and that any mental suffering she might have endured was not occasioned by physical injury. No damages were allowed for slander. It will thus be seen that the judgment of the trial court rested entirely upon the mental suffering endured by plaintiff. The defendant made the same argument in that case that is made here, that is, that the plaintiff could not recover for mental suffering alone when there had been no physical injury. This court held that the assault was an invasion of a right of plaintiff to personal security—to be free from such things—to be let alone, and that the mental suffering was a consequence of such invasion. So in this case, the plaintiff had a right to the body of her dead husband in the condition in which it was when he died. She alone could give authority for an autopsy on

that body, except in case where death might occur under such circumstances as to warrant the coroner in conducting an autopsy, a circumstance we do not have here. The unauthorized cutting into the body of plaintiff's husband was an invasion of that right. The mental suffering she alleges she endured was a direct consequence of that invasion.

This conclusion is borne out by the holding in *Coty v. Baughman*, 50 S. D. 372, 210 N. W. 348; *Burney v. Children's Hospital*, 169 Mass. 57, 47 N. E. 401; *L. & N. Railroad Co. v. Blackmon*, 3 Ga. App. 80, 59 S. E. 341; *Darcy v. Presbyterian Hospital*, 202 N. Y. 259, 95 N. E. 695. See, also, *Hill v. Travelers Ins. Co.*, 154 Tenn. 295, 294 S. W. 1097. This case is also reported in 52 A. L. R. 1442, where the subject is annotated at length. It appears from the note to which reference was just made that the universal holding of the courts is as outlined already in this opinion.

Defendant makes the further point that the petition does not state a cause of action because there is no allegation of the amount or extent of damage or injury caused by the allegedly unlawful acts of defendants. The first sentence of the petition is as follows:

"Plaintiff, Bertha Alderman, a citizen and resident of Dearing, Kan., sues Sherman Ford and W. S. Hudiburg for five thousand dollars damages, for this: . . ."

Then follows a detailed statement of the acts of defendants. The last paragraph of the petition before the prayer is as follows:

"That plaintiff has been damaged on account of the violated rights of hers by the defendants as previously mentioned, and damaged by the mental anguish and depression of spirits, and insult to her feelings all caused by the wrongful and tortious acts and misconduct of these defendants."

Then follows the prayer. This petition is not in the usual form for petitions, but, as against a general demurrer, it complies with G. S. 1935, 60-704.

Defendant Ford included in his demurrer the ground that the petition showed on its face that it was barred by the statute of limitations, since it shows that it was not brought within one year of the date when the cause of action arose. As will be noted, we have concluded that this action is for any injury to the rights of another and could be maintained within two years of the time when the action arose. (See G. S. 1935, 60-306, *third*. See, also, *Hill v. Travelers Ins. Co.*, supra.)

The judgment of the trial court is reversed with directions to proceed with the trial of the cause in accordance with the views expressed herein.