No. 34,118

PEARL M. HAMILTON, *Appellee*, v. THE INDIVIDUAL MAUSOLEUM COMPANY, *Appellant*.

(86 P. 2d 501)

Opinion filed January 28, 1939.

*W. W. Brown* and *C. E. Pile,* both of Parsons, for the appellant.

*E. W. Columbia,* of Parsons, and *Robert S. Lemon,* of Pittsburg, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action to recover damages alleged to have been sustained when defendant broke open a mausoleum and removed therefrom the casket in which the body of the mother of plaintiff had been buried. There was a verdict for plaintiff. A new trial was granted on the trial court's own motion. Defendant appeals.

The petition alleged defendant had sold the mausoleum for the burial of plaintiff's mother in 1930 on the representation that it would be forever free from water and would keep dry the casket in which her mother was buried; that these representations were false and fraudulent; that the contract was made between defendant and

the father of plaintiff, the surviving husband of the mother. The petition also alleged facts relative to the mental suffering of plaintiff, due to the fact that she had learned water had seeped into the vault; and further that plaintiff had been damaged because defendant had broken into the vault without her consent.

In response to various motions directed at the petition by defendant it was finally amended by striking out all references to the violation of the contract or to false representations, leaving nothing in the action except the alleged breaking into the vault and such damages as resulted therefrom.

In answer to this petition, defendant filed a general denial, and subsequently amended this answer by allegations that the brothers and sisters of plaintiff, four in number, each brought actions against the defendant alleging the same facts as alleged by plaintiff. On motion of plaintiff these allegations were stricken from the answer.

At the trial counsel for plaintiff in his opening statement stated that the mother of plaintiff, Olive B. Wright, was buried in this vault in June, 1930, by the father, George T. Wright, on a lot owned by Eldo Wright, his son; that the father had died shortly before the 21st of July, 1935, and was buried in a lot belonging to James P. Wright, his son, who was living; that the plaintiff had found out from her brother that the casket was removed from the old vault; that there was water in the old vault; that the defendant had trespassed upon the burial lot of Eldo Wright and it had affected her mental and physical condition. At the conclusion of this statement defendant filed a motion for judgment on the pleadings and opening statement. This motion was overruled.

At the trial the evidence of plaintiff disclosed a situation about as stated by counsel. In addition the evidence disclosed that on the death of Olive B. Wright there were six sons and a daughter and her husband surviving, all adults; that one son, Eldo Wright, owned a burial lot, and the mother, Olive B. Wright, was buried there; that Eldo died in 1932, leaving a widow who succeeded to the ownership of the lot. The evidence further disclosed that the remaining sons and daughters decided to move the vault containing the remains of their mother from the lot of Eldo Wright to the lot of James P. Wright and inter them by the side of those of the father; that when some excavating had been done it was discovered that water had entered the vault in which the mother was buried; that the defendant was notified of this in the evening of July 19, 1935, by James P.

Wright, one of the sons, and it was arranged that the defendant's employees would meet the Wrights at the cemetery at 8 o'clock the next morning; that the next morning about 6 o'clock the employees of defendant went to the cemetery, and finding that the old vault had leaked, raised the old vault from the ground and with chisels and a cutting instrument cut into the end of the old vault; that they removed the casket and placed this casket in the new vault; that the employees were about to place the new vault in the new grave and were about to seal the inner lid of the vault above the casket when James P. Wright appeared at the cemetery and requested defendant's employees to cease work. The evidence further disclosed about how plaintiff found out about the vault being opened by defendant without permission and about how her health was damaged on account of her worrying about the whole situation. At the close of the evidence of plaintiff defendant interposed a demurrer to it. This demurrer was overruled.

At the close of the evidence of defendant the jury returned a verdict for plaintiff in the amount of $550. Special questions were answered as follows:

"1. Do you find that all the mental suffering and anguish and loss of health plaintiff suffered was caused by the fact that water got into the vault and around the casket when she expected a dry, clean condition of the vault? A. No.

"2. Do you find from the evidence that the defendant was under an obligation through its guaranty to make and maintain this mausoleum or burial structure, and to keep the individual mausoleum sold to Geo. T. Wright for the burial of Olive B. Wright, in a sealed and sanitary condition, or to furnish a new mausoleum? A. Yes.

"3. Do you find that the employees of defendant, on or about July 21, 1935, believed that they were required, because of their guaranty and promises, to repair or replace the defective mausoleum involved in this suit? A. Yes.

"4. Do you find that the employees of defendant, on or about July 21, 1935, were exchanging vaults because of wantonness, willfulness, or malice and intentional wrong toward plaintiff? A. Yes.

"5. Do you find that the employees of defendant, on or about July 21, 1935, were attempting to make an exchange of vaults in the usual manner and with due respect for the living, and with proper care for the dead? A. No.

"6. If you find for plaintiff, do you include anything in your verdict, and if so, what amount for punitive damages because of malice, wanton, or willful and intentional wrong toward plaintiff? A. Yes; amount, $550.

"7. If you find for plaintiff, do you find from the evidence that defendant was attempting to make an exchange of vaults on or about July 21, 1935, in good faith that it was required to do so because of its guaranty?. A. No.

"8. If you find for plaintiff, do you include in your verdict any damages

for injury because of the wetness of the casket and damaged condition of the casket, or because of the mental suffering and distress of plaintiff produced by the knowledge that she obtained to the effect that water was in the vault and around the casket, and knowledge that she obtained by seeing something poured out on the grass of the cemetery grounds, which she took to be water that had come from the interior of the vault, and if so, in what amount? A. No. Amount, none."

The trial court refused to receive this verdict and directed the jury to return to its room and consider further. This happened four times. The fourth time the jury reported it still found a verdict in the amount of $550, and in answer to question 8 it fixed the damages for the elements stated therein at $50. The trial court received this verdict.

The defendant filed a motion for a new trial and also for judgment on the special findings notwithstanding the general verdict because the special findings were inconsistent with the general verdict. The defendant also filed a motion requesting the trial court to receive the verdict first returned by the jury. When these motions were heard the trial court overruled the motion of defendant to receive the verdict of the jury first returned. Defendant then asked leave to withdraw its motion for a new trial. This request was allowed. Defendant then argued its motion for judgment on the special findings. This motion was overruled. The trial court then announced as follows:

"Thereupon, the court announced that upon its own motion, a new trial should be, and the same hereby is, ordered, on the ground and for the reason that the answers to the special questions as returned by the jury in the first instance show that there was a misunderstanding on the part of the jury as to the law of the case; and that the answers to the special questions, as finally returned by the jury in the last instance, show that the jury misunderstood the instructions, and the said findings are contrary to the instructions of the court, in that the jury allowed $50 actual damages as shown by the answer to question No. 8 for certain elements of damage that were outside the issues of this case, and did not allow any actual damages for elements within the issues of the case, and the answers to said special questions are such that they indicate to the court that the jury did not at any time understand the law of the case, and that it would defeat justice to permit said verdict and the answers to the special questions to stand, and to deny a new trial in this case."

It should be stated at the outset that the court was correct in ordering a new trial. It is clear that the jury allowed damages for elements that were outside the issues of the case in its answer to question 8. This showed clearly that the jury did not understand

the instructions of the court. Under such circumstances it was the duty of the court to allow a new trial on its own motion.

There remains, however, the question of whether the trial court was correct in overruling the motion of defendant for judgment on the pleadings and opening statement of counsel, in overruling the demurrer of defendant to the evidence of plaintiff and in overruling the motion of defendant for judgment at the close of the evidence.

Defendant first argues that plaintiff had no right of action because it did not appear that she had any duty to protect the remains of her mother. The gist of this argument is that at the death of her mother the father had a right to assume control of the body of his wife and that he did so by the interment on the son's lot and thereby consigned the care and custody of the body to the son, and at the death of the son it passed to the son's widow with the ownership of the lot.

The trouble with that argument is that there is no question here about the right to go upon the lot. All the parties who had anything to do with this action had agreed to that. The duty and right to care and custody had passed from the owner of the lot if it had ever been there when the arrangement was made by all the parties interested to move the vault containing the body. We do not have the question of what the situation would be had one of the Wright children given permission for the vault to be opened. Here none of them had given this permission. It must be remembered that the act for which plaintiff seeks to hold defendant is not the opening of the grave, it is the opening of the vault. At the death of the husband of Olive Wright the right to care for the body of the mother belonged to all the children alike. (See *North East Coal Co. v. Pickelsimer*, 253 Ky. 11, 68 S. W. 2d 760.)

Defendant next argues that plaintiff had no right of action because a right of action accrued to herself and her brother alike and it was necessary that they all should join. The basis of the action is the injury to the plaintiff's rights and sensibilities by the unauthorized disturbance of her mother's casket. The distress, anguish and suffering caused by this act are peculiar to her. Perhaps it did not disturb her brothers at all. We cannot pass on that question in this case. It would be out of the question to require that before plaintiff could bring this action she must be joined by all her brothers and sisters. Why should this be the rule in such a case as this any more than in any other tort case? *Finley v. At-*

*lantic Transport Co.,* 220 N. Y. 249, 115 N. E. 715, is a case where a father died at sea and was buried at sea just before the ship reached port. An action was brought by his son. The defendant raised the same questions that we have here. The court said:

"The counsel next asserts that there is a defect of parties plaintiff in that the brothers and sisters of plaintiff are not joined as parties plaintiff in the action. The plaintiff here seeks only to recover such damages as are personal to him. As the son of the deceased he had a right to receive the body for burial, and no reason exists why he should be obliged to join other next of kin in an action wherein he seeks compensation personal to himself." (p. 258.)

See, also, The Law of Cadavers, by Jackson. There it is said:

"While today 'a dead body, after burial, becomes part of the ground to which it has been committed; and an action to trespass may be maintained by the owner of the lot, in possession, against one who disturbs the grave and removes the body, so long, at least, as the cemetery continues to be used as a place of burial,' the real basis of injury is the violation of the feelings of the living by the indignity to the dead, rather than the invasion of the right of property." (p. 169.)

This is the effect of our holding. (*Alderman v. Ford,* 146 Kan. 698, 72 P. 2d 981.)

Defendant next argues that the statutes of Kansas required defendant to remedy the defect in this vault and that it was obeying this statute when it did the acts of which complaint is made. This statute is G. S. 1935, 17-1324 to 17-1327. These sections are as follows:

"That hereafter when any person, firm, or corporation, shall desire to build, construct, or erect any mausoleum, vault, or burial structure, the same to be built or constructed entirely above the ground, or partly by excavation, and to be built, constructed and erected so that the same may contain one or more deceased human bodies for permanent interment, before proceeding to build. construct, or erect such mausoleum, vault or other structure, shall present and file a copy of all the plans and specifications for such construction with the state board of health of the state of Kansas, and before approving such plans and specifications said board of health shall be satisfied beyond any doubt that the said mausoleum, vault, or other structure would be absolutely permanent and sanitary, and if approved, said approval shall be evidenced by a certificate in writing signed by a majority of all the members of .said board of health, may proceed with the construction and erection of said mausoleum, vault or other structure." (G. S. 1935, 17-1324.)

"All crypts, catacombs, if any be placed therein in said mausoleum, vault, or other structure, shall be so constructed that all parts thereof may be readily and easily examined by the state board of health, or any other health officer, and such crypts or catacombs, shall be hermetically sealed, after such deceased

bodies shall have been placed therein, that no offensive or unhealthful odor or effluvia may escape therefrom." (G. S. 1935, 17-1325.)

"Should any firm, person or corporation fail to hermetically seal such crypts or catacombs, so placed or constructed in such mausoleum, vault, or other burial structure and by reason of such failure, or other reasons offensive odors or effluvia arise therefrom, such state board of health or any health officer of the state or county, in which such mausoleum, vault or other burial structure shall be situated shall upon the complaint of any city health officer or resident of the township, where such mausoleum, vault or other structure may be situated, compel the sexton or other persons in charge of such mausoleum, vault or other burial structure to immediately place such mausoleum, vault or other burial structure in perfect and sanitary condition or immediately remove said deceased body or bodies therefrom, and properly inter the same at the expense of the person, firm or corporation, owning such mausoleum, vault or other burial structure. And if no such person, firm or corporation can be found in the county where the same may be located, then such interment shall be at the expense of the township or city where such structure may be situated." (G. S. 1935, 17-1326.)

It is clear that defendant was not seeking to comply with this statute when its employees were sent to the cemetery two hours ahead of the appointed time and proceeded to open this vault before any of the Wrights arrived. The petition alleged that the defendant acted willfully, wrongfully and maliciously and that its conduct was wanton. There was some evidence that this was true. Under such a charge we cannot say that acts so characterized were in compliance with the above statute.

Defendant next argues that its motion for judgment on the special findings should have been allowed. Defendant points out instruction 17 where the jury was told that before it could return a verdict in favor of the plaintiff and against the defendant for punitive damages it must find that plaintiff had suffered some real or substantial damage. It will be remembered that when the jury returned its first verdict it allowed $550 for punitive damages and the general verdict was for $550. The trial court instructed the jury to return to the jury room. After a while the jury announced that it had reached another verdict. When this verdict was examined by the trial court it instructed the jury at some length and told it, among other things, that the special findings controlled the general verdict. At this point defendant objected to the jury being allowed to consider the case further and asked that the jury be discharged. It is clear to us that the trial court was warranted in concluding that the jury did not understand the instructions. The court was dissatisfied with the verdict. Under such circumstances it was the

duty of the trial court to order a new trial. (See *Klopfenstein v. Traction Co.*, 109 Kan. 351, 198 Pac. 930; *Frakes v. Travelers Mutual Cas. Co.*, 148 Kan. 637, 84 P. 2d 871.) The court was correct when it held that the proper order to make was for a new trial rather than an order giving the defendant judgment on the special findings.

The judgment of the trial court is affirmed.