No. 54,113

RONALD PAUL LANTZ and MARGARET MARY LANTZ, *Appellants*, v. CITY OF LAWRENCE, KANSAS, a municipal corporation, GEORGE OSBORNE, RICHARD DEMBY, HOMER GIST and DAN McALISTER, *Appellees.*

(657 P.2d 539)

Opinion filed January 14, 1983.

*Pantaleon Florez, Jr.,* of Hawver & Irigonegaray, P.A., of Topeka, argued the cause, and *Ira Dennis Hawver,* of the same firm, was on the brief for the appellants.

*Patrick E. Peery,* of Allen, Cooley & Allen, of Lawrence, argued the cause, and *Gerald L. Cooley,* of the same firm, was with him on the brief for the appellees.

The opinion of the court was delivered by

SCHROEDER, C.J.: This is an appeal by Ronald and Margaret Lantz (plaintiffs-appellants) from a summary judgment entered against them dismissing their action against the City of Lawrence and named city employees (defendants-appellees) for negligence and conversion in cutting trees and mowing vegetation on the appellants' property. The district court found the city and named employees immune from liability under the provisions of the

Kansas Tort Claims Act (KTCA). K.S.A. 1981 Supp. 75-6101 *et seq.*

The case arises out of the enforcement of the City of Lawrence Ordinance No. 4110, a weed abatement ordinance codified at Section 18-501 *et seq.,* of the City Code. The ordinance provides that where weeds on any premises are declared by the city governing body to be a public nuisance and are not destroyed or removed without delay by the property owners, the city will have the weeds removed.

On May 15, 1979, the City Commission adopted a resolution declaring weeds to be a public nuisance and called for the immediate abatement of the nuisance. The resolution was published in the Lawrence Journal-World on May 21, 1979, and May 28, 1979. As required by the ordinance a hearing was held before the Superintendent of Parks and Forestry, defendant George Osborne, on May 30, 1979. The appellants did not attend this hearing.

Sometime before June 5, 1979, defendant Osborne decided the vegetation growing on the appellants' property constituted "weeds" growing in violation of the ordinance and resolution. On June 5, 1979, a written notice was mailed to the appellants informing them that if their property was not mowed within five days a city crew would be dispatched to mow it as provided in the ordinance. When inspected again after five days, the condition of the appellants' property was unchanged.

On June 15, 1979, a mowing crew from a private contractor employed by the city was dispatched to the appellants' property where they began to mow the parking area. Mr. Lantz chased the crew off his property with a pellet rifle, which later resulted in a criminal conviction.

On July 24, 1979, defendant Osborne instructed the City Parks Department Supervisor, defendant Richard Demby, to take a crew to appellants' property the following day to mow and clean up the property. Osborne also called the Lawrence Police Department and asked that some police officers be dispatched to accompany the mowing crew onto appellants' land. The next day two officers, defendants Homer Gist and Dan McAlister, met the city crew at the appellants' home and informed the appellants they were there to insure that no guns were used. Mr. Lantz indicated he did not believe the city had authority to cut and clear

his property but he would not interfere with the cutting. Mr. Lantz then left to seek legal assistance.

The city crew proceeded to mow and clear the Lantz property using weed trimmers and chain saws. The appellants claim that in the process various plants, flowers and approximately 63 trees (30 hackberry trees, 17 elm trees, 11 walnut trees, 4 ash trees and 1 oak tree) were cut down. According to appellants, the city destroyed all but the largest trees on their property.

Appellants brought this action for actual and punitive damages suffered, alleging the defendants wrongfully cut the trees and other plants. After extensive discovery the defendant city filed a motion for summary judgment. Highly summarized, the district court determined the controlling facts to be that the named city employees were acting within the scope of their employment and within the authority granted by the City Code when they went onto the appellants' property, and that the police officers were only present to preserve the peace and to ensure that no weapons were used. The court specifically found that while enforcing the code provisions the city employees "wrongfully cut 63 of plaintiffs' trees." The court ruled the city was exempt from liability under the KTCA as the city employees' conduct fell under the "enforcement of a law" exception contained in K.S.A. 1981 Supp. 75-6104(c). The court also concluded that punitive damages were barred because there was no evidence of malice on the part of any defendant.

The Kansas Tort Claims Act, K.S.A. 1981 Supp. 75-6101 *et seq.,* creates broad liability for governmental entities, subject to enumerated exceptions. K.S.A. 1981 Supp. 75-6103(a) provides:

"Subject to the limitations of this act, each governmental entity shall be liable for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment under circumstances where the governmental entity, if a private person, would be liable under the laws of this state."

The only exception asserted by the appellees which would nullify the application of this statute is contained in K.S.A. 1981 Supp. 75-6104, which states:

"A governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from:

. . . .

"(c) enforcement of or failure to enforce a law, whether valid or invalid, including, but not limited to, any statute, regulation, ordinance or resolution."

The appellees maintain that the actions of the city employees giving rise to this lawsuit were taken to enforce the city's weed abatement ordinance and therefore they are exempt from liability by the language of 75-6104(c). The trial court noted:

"The exception from liability for damages resulting from enforcement of law is clear and unambiguous. The intent of the legislature is clearly stated that immunity is granted a governmental entity and its employees while enforcing its law and no other construction is needed or proper."

The appellants maintain it was not the legislature's intent to provide a shield of immunity for wrongful acts in enforcing any law or ordinance in any manner whatsoever, and insist a standard of due care, similar to that contained in the federal statutory counterpart, 28 U.S.C. § 2680(a), should be judicially read into 75-6104(c) and imposed upon governmental entities in the enforcement of laws and ordinances.

At the outset it is important for this court to distinguish between the liability of defendants Gist and McAlister and the liability of the city and defendants Osborne and Demby for damages resulting from the alleged enforcement of the city's weed abatement ordinance, although such a distinction was not made by the trial court. It is clear from the record that the police officers were present, while the appellants' property was being cleared, to protect the safety of the mowing crew and to ensure that no weapons were used. The trial court specifically found this to be an uncontroverted fact in its decision on the motion for summary judgment. The officers' presence was warranted in light of the incident on June 15, 1979, when another mowing crew was threatened by Mr. Lantz with a pellet rifle. Further, the record does not indicate that the police officers participated in any way in the actual mowing and clearing process.

The presence of these officers was necessary under the circumstances to preserve the peace and protect the safety of the mowing crew. They were clearly acting within the scope of their employment in the enforcement of a law under the provisions of K.S.A. 1981 Supp. 75-6104(c). The trial court correctly held that defendants Gist and McAlister were exempt from liability for damages resulting from the incident.

In determining the liability of the city and defendants Demby and Osborne, our focus in this case is not centered upon the standard of care imposed by the KTCA upon a governmental

entity and its employees while enforcing its laws and ordinances, but rather upon whether the actions of defendants Osborne and Demby were within the purview of the weed abatement ordinance under which they allegedly were acting when they directed the city's mowing crew to enter and clear the appellants' property. "Weeds" are defined in the ordinance as:

"1. *Weeds and indigenous* grasses which may attain such large growth as to become, when dry, a fire menace to adjacent improved property.

"2. *Weeds* which bear or may bear seeds of a downy or wingy nature.

"3. *Weeds* which are located in an area which harbours rats, insects, animals, reptiles, or any other creature which either may or does constitute a menace to health, public safety or welfare.

"4. *Weeds and indigenous grasses* on or about residential property, which because of its height, has a blighting influence on the neighborhood. Any such weeds and indigenous grasses shall be presumed to be blighting if they exceed twelve (12) inches in height." (Emphasis added.)

Nowhere in the above definition do the words "tree" or "trees" appear, not does it encompass the type of plant one would typically consider to be a tree. "Weeds and indigenous grasses" implies the type of vegetation which could be cut with some type of mower or weed trimmer; it would not contemplate the use of a *chain saw* for the removal of such vegetation. Where the growth of weeds on any premises has been declared a nuisance, the ordinance authorizes the city to remove *weeds or similar type vegetation.* The ordinance itself provides only that the "work of abating such nuisance will be done by the City authorities"; the manner by which it will be done is not specified. The notice received by the appellants informed them the city would "mow" their property if the weeds were not removed by a certain date. The notice did not indicate to the appellants that anything other than mowing or normal incidents thereto would take place. The ordinance does not in any way purport to authorize the city to use chain saws in its "mowing" process nor to remove trees from the premises. Consequently, a property owner is given no advance notice this might be done and so is denied the opportunity to challenge the city's authority to do so.

The evidence presented in the record on appeal establishes that the mowing crew used weed trimmers and chain saws to clear the appellants' land of vegetation and, in the process, 63 trees on appellants' property were cut down. No further evidence appears concerning the size, age, visibility or location of the trees, nor

concerning the extent and nature of the use of the chain saws. The appellants allege, however, that all but the largest trees on their property were destroyed. In considering a motion for summary judgment, the party against whom the motion is directed is entitled to the benefit of all reasonable inferences and doubts that may be drawn from the facts under consideration. Where genuine issues of material fact remain undetermined, the granting of summary judgment is improper. *Farmers State Bank & Trust Co. of Hays v. City of Yates Center,* 229 Kan. 330, 341-42, 624 P.2d 971 (1981).

Drawing all reasonable inferences from the appellants' statement of facts, a material issue of fact emerges concerning whether the city employees' actions of cutting down 63 trees on the appellants' property with chain saws was within the purview of the city's weed abatement ordinance authorizing the removal of weeds by the city. A determination of the difference between the trees cut down and weeds growing on the premises, as defined by the ordinance, was necessary to the issue presented by the motion for summary judgment. If at trial it is determined the city employees' actions giving rise to this lawsuit were outside the purview of the ordinance, the exception contained in 75-6104(*c*), exempting governmental entities from liability where damage results from the enforcement of a law, is inapplicable. K.S.A. 1981 Supp. 75-6103(*a*) therefore would apply and the city and defendants Osborne and Demby could be held liable if their actions are determined at trial to be negligent or wrongful.

Our decision in this case is not without support. In *Roberts v. City of Stillwater, Okl.,* 646 P.2d 6 (Okla. App. 1982), involving a tort claims act provision similar to the Kansas provision here involved, it was held the city was not exempt from liability where a police officer acted beyond the scope of her employment by making an invalid arrest. The court rejected the contention that regardless of how flagrant or illegal an officer's arrest may be, neither the arresting officer nor the political subdivision could be held liable in tort so long as the police officer was acting within "the scope of his employment attempting to enforce a law." Looking to Oklahoma case law the court determined the arrest by the police officer was invalid and therefore the defendants were not enforcing a law and were not exempt from liability under the act. 646 P.2d at 9.

A similar sentiment was expressed by the Indiana Supreme Court in its decision in *Seymour Nat. Bank v. State,* _____ Ind. _____, 422 N.E.2d 1223, *aff'd on rehearing* 428 N.E.2d 203 (1981). That case concerned the interpretation of the "enforcement of a law" exception in the Indiana tort claims act, where an Indiana state trooper involved in a high speed car chase with a criminal suspect collided with a third vehicle, resulting in the deaths of two passengers. The court held the state trooper was engaged in the enforcement of a law at the time the accident occurred and, under the clear and unambiguous language of the statute, the state was exempt from liability. 422 N.E.2d at 1226. On rehearing, the court rejected the plaintiffs' contention that its opinion immunized governmental entities "from all liability for all losses that result from any act which [could] *possibly* be characterized as enforcement of the law." (Emphasis supplied by court in original.) The court emphasized that while there is immunity for damages resulting from any act which could *properly* be characterized as enforcement of the law, not all acts of enforcement of laws by employees were exempt from liability, stating:

"[A]n employee's acts, although committed while engaged in the performance of his duty, might be so outrageous as to be incompatible with the performance of the duty undertaken. In such a case, it cannot be said that an injury resulting therefrom resulted from the performance of the duty. . . .

". . . With regard to those acts that are so incompatible with the performance of duty as to be outside the scope of the employment, there is no statutory grant of immunity either to the employee or to the governmental entity. . . . ." 428 N.E.2d at 204.

We hasten to emphasize in the instant case that if the trier of fact should find, after further development of the facts upon remand to the trial court, that the trees removed by the city were indistinguishable by city employees from other weeds growing on the premises, as defined by the ordinance, and further, that the use of chain saws was necessary and proper in the removal of such weeds and overgrowth, the appellees would have acted within the purview of the weed abatement ordinance and the exception contained in 75-6104(c) would apply. Insufficient evidence is presented on appeal, however, for this court to determine as a matter of law whether or not the city employees' actions were within the purview of the ordinance and, accordingly, whether or not 75-6104(c) applies. A material issue of fact exists in this case;

it was therefore improper for the trial court to grant the appellees' motion for summary judgment.

By remanding this case to the trial court it is necessary to consider additional issues presented by the appellants.

The appellants contend the trial court erred in ruling they were not entitled to punitive damages. The KTCA, K.S.A. 1981 Supp. 75-6105(c), makes the following provision concerning punitive damages:

"A governmental entity shall not be liable for punitive damages or for interest prior to judgment. An employee acting within the scope of the employee's employment shall not be liable for punitive damages or interest prior to judgment, except for any act or omission of an employee because of actual fraud or actual malice."

The appellants argued to the trial court that the use of chain saws and cutting trees reflected actual malice, and individual employees could be held responsible for punitive damages. The trial court made these findings on this issue:

"1) Although exempt from liability for actual damages, employees of a governmental entity may be liable for punitive damages if their actions were the result of actual malice. K.S.A. 1980 Supp. 75-6105(c).

"2) Reconciliation of the two statutes (75-6104 and 75-6105) may appear difficult because of the longstanding rule that punitive damages are not awarded where there is no right to recover actual damages. *McDonald vs. Bauman,* 199 Kan. 628, 636, 433 P2d 437. The statutes can be reconciled, however, on the theory that fault may be attributed to defendants although they are immune from actual damages. See for example K.S.A. 60-285(a)(c); *Wilson vs. Probst,* [224 Kan. 459, 581 P.2d 380].

"3) Defendant employees, although immune from liability for actual damages for their fault, may be liable for punitive damages if their fault was because of actual malice."

The court concluded the evidence in the record did not support the appellants' claims of actual malice or willful and specific intent to injure, and thus held that no punitive damages should be allowed. The appellees contend the exceptions contained in 75-6104 provide immunity from all damages, both actual and punitive, regardless of the existence of malice. We agree.

K.S.A. 75-6104 provides that an employee acting within the scope of employment shall not be liable for *damages* if the acts are exempted by the statute. The language makes no distinction between types of damages and cannot be read to provide exemption only from actual damages. Established Kansas law provides that before punitive damages may be awarded, a plaintiff must

establish a right to recover actual damages. *Traylor v. Wachter,* 227 Kan. 221, 224, Syl. ¶ 4, 607 P.2d 1094 (1980); *Webber v. Patton,* 221 Kan. 79, 81, 558 P.2d 130 (1976). It follows that in a case where the plaintiff has no right to recovery because of a statutory exception like those stated in 75-6104, there can also be no right to recover punitive damages. The trial court's ruling implies that this rule of law is abrogated and punitive damages may be awarded in the absence of liability for actual damages.

It does not appear to us that the legislature intended to establish an independent cause of action for punitive damages by the enactment of 75-6105(c). It is presumed the legislature acted with full knowledge and information as to the subject matter of the statute, as to prior existing law and legislation on the subject of the statute, and as to our prior judicial decisions on the subject. *Rogers v. Shanahan,* 221 Kan. 221, 225, 565 P.2d 1384 (1976). The language of the two sections at issue here does not support the interpretation made by the trial court. If a dramatic change in the law was intended by the enactment of 75-6105(c), it must be assumed language making that specific intent clear would have been used.

The appellants next contend they are entitled to recover damages for mental pain and suffering in the absence of physical injury. This issue was presented to the trial court but was not ruled upon because the court found the plaintiffs' claims were barred by the KTCA. On appeal, the appellants additionally attempt to claim relief on the basis of the tort of outrage, alleging the city's conduct was so outrageous as to be actionable. The theory of outrageous conduct was not presented to or determined by the trial court and thus must fall victim to the oft-stated rule that a point not raised before, or presented to the trial court, may not be raised for the first time on appeal. See *Anderson v. Overland Park Credit Union,* 231 Kan. 97, Syl. ¶ 6, 643 P.2d 120 (1982).

With regard to the issue of damages for mental suffering and pain in the absence of physical injury, Kansas case law permits recovery of damages for mental distress without physical injury in cases where the injurious conduct is willful and wanton and the defendant acts with intent to injure. See *Lonergan v. Small,* 81 Kan. 48, 105 Pac. 27 (1909). Our court has held that damages may be had only for mental distress if such distress is caused by

intentional or reckless outrageous conduct. *Dawson v. Associates Financial Services Co.,* 215 Kan. 814, 529 P.2d 104 (1974); *Wiehe v. Kukal,* 225 Kan. 478, 592 P.2d 860 (1979); *Alderman v. Ford,* 146 Kan. 698, 72 P.2d 981 (1937); *Hamilton v. Individual Mausoleum Co.,* 149 Kan. 216, 86 P.2d 501 (1939).

Thus, appellants may recover damages for mental distress in the absence of personal physical injury if (1) their claims are not barred by the KTCA and (2) they prove the defendants acted willfully, wantonly and with an intent to injure. The latter is a question of fact to be determined by the trier of fact upon remand.

The appellants also challenge the Lawrence Weed Abatement Ordinance as violative of due process of law and argue that the cutting of appellants' trees constituted a taking, entitling them to compensation. This was not raised before the trial court and therefore cannot be asserted before this court on appeal. This action was filed on a tort theory alleging trespass, negligence and conversion by the defendants, seeking damages both actual and punitive.

The judgment of the lower court is affirmed in part and reversed in part. This case is remanded to the trial court for further proceedings in accordance with this opinion.

PRAGER, J., concurs in result.