Mary Ann PERRY, Ron Perry, Don Perry, Linda Huntsman, Beverly Blassingame, and Vickie Puff, Plaintiffs,

v.

SAINT FRANCIS HOSPITAL AND MEDICAL CENTER, INC. and American National Red Cross, Defendants.

No. 93–4231–SAC.

United States District Court, D. Kansas.

Sept. 27, 1994.

Nancy E. Freund, Murphy & Freund, Ronald P. Pope, Eugene B. Ralston & Assoc., P.A., Topeka, KS, for plaintiffs.

Thomas L. Theis, Sloan, Listrom, Eisenbarth, Sloan & Glassman, Topeka, KS, for St. Francis Hospital.

James S. Pigg, Kristine A. Larscheid, Fisher, Patterson, Sayler & Smith, Topeka, KS, for American Nat. Red Cross.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on the defendant St. Francis Hospital's motion to dismiss (Dk. 32) and the defendant Red Cross' motion to dismiss and motion to strike (Dk. 33). According to the parties, the motion to strike is moot. The court will proceed with the motions to dismiss.

This is an organ donation case in which the plaintiffs allege the defendants' harvest pro-

cedure exceeded that to which consent had been given. Kenneth Perry suffered a heart attack at his home and was pronounced dead at the defendant St. Francis Hospital. Shortly thereafter, Nurse McDonald approached the Perry family with an organ donation form that had been filled out for donation of all organs. The family initially refused to donate any organs. Relying on representations that certain donations would not disfigure the deceased, the Perry family eventually agreed to donate Kenneth Perry's cornea and bone marrow. It is further alleged that the Perry family understood the corneas could be taken without removing the deceased's entire eyes and that the bone marrow could be extracted without removing the deceased's long bones. After it was modified, the written consent form was signed by Mary Ann Perry, the wife of the deceased. A retrieval team consisting of defendants' agents later removed the long bones and entire eyes from the deceased. The plaintiffs first learned of the disfigurement to the deceased when the funeral home informed them that Kenneth Perry's body required heavy clothing to hide the missing bones.

The surviving spouse, Mary Ann Perry, and the surviving adult children, Ron Perry, Don Perry, Linda Huntsman, Beverly Blassingame and Vickie Puff, bring this suit seeking recovery on four different legal claims: Count I–Intentional Infliction of Emotional Distress; Count II–Breach of Contract; Count III–Negligence; and Count V–Conversion. Both defendants move to dismiss all claims of the surviving adult children and the negligence claim in count three.

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Dismissal is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a mat-

ter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod,* 988 F.2d 635, 638 (6th Cir.1993).

A court judges the sufficiency of the complaint accepting as true the well-pleaded factual allegations and drawing all reasonable inferences in favor of the plaintiff. *Shaw v. Valdez,* 819 F.2d 965, 968 (10th Cir.1987).[1] It is not the court's function "to weigh potential evidence that the parties might present at trial." *Miller v. Glanz,* 948 F.2d 1562, 1565 (10th Cir.1991). The court construes the allegations in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Hall v. Bellmon,* 935 F.2d 1106, 1109 (10th Cir.1991). These deferential rules, however, do not allow the court to assume that a plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated General Contractors v. California State Council of Carpenters,* 459 U.S. 519, 526, 103 S.Ct. 897, 902, 74 L.Ed.2d 723 (1983) (footnote omitted). Dismissal is a harsh remedy to be used cautiously so as to promote the liberal rules of pleading while protecting the interests of justice. *Cayman Exploration Corp. v. United Gas Pipe Line,* 873 F.2d 1357, 1359 (10th Cir.1989).

The court's legal research on these motions went well beyond that cited by the parties. The parties limited their research, for the most part, to the three Kansas Supreme Court decisions on actions for interference with a dead body, *Burgess v. Perdue,* 239 Kan. 473, 721 P.2d 239 (1986); *Hamilton v. Individual Mausoleum Co.,* 149 Kan. 216, 86 P.2d 501 (1939); and *Alderman v. Ford,* 146 Kan. 698, 72 P.2d 981 (1937). From its research, the court concluded that Kansas law is not nearly as developed in this area as the law in many other jurisdictions. The parties, however, have not advanced here the arguments that would require this court to look to other jurisdictions in resolving the issues. The court will decide the motions from what has been argued.

---

1. "[T]he court need accept as true only the plaintiff's well-pleaded factual contentions, not his conclusory allegations." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991).

## A. Standing of Adult Children

When there is a surviving spouse, Kansas common law, according to the defendants, recognizes that the surviving spouse is the only person with a legally protected interest in receiving the deceased's body. The defendants argue the Uniform Anatomical Gift Act ("Act"), in particular K.S.A. 65–3210(b), reflects this same common-law rule.[2] Because the plaintiffs' different claims are inextricably linked to the allegation that Kenneth Perry's body was disfigured, the defendants argue that only the widow and not the adult children have standing to sue. In opposition, the adult children maintain their standing arises from each of them being asked to consider making a donation and from them discussing the donation before having their mother sign the donation consent form. They also assert that a contract between the defendants and them exists by reason of what they were told would be the surgical procedures. The adult children refer to their rights under the Act to make donations if their mother had not been available. They insist that each of them would have signed the consent document had there been more spaces on the form for their signatures.

■ Kansas recognizes that the next of kin has a personal right to possess the dead body of a relative for purposes of preserving and burying it. *Alderman v. Ford,* 146 Kan. at 700, 72 P.2d 981. Attendant to this right is the right to receive the dead body in the condition in which it was when the relative died. *Id.* at 699, 72 P.2d 981. Interference with these rights is an actionable wrong in Kansas. *Id.* at 702, 72 P.2d 981.

■ Generally, the person who has the right to possess and bury the body is the only proper party to sue and recover for the interference with that right. *Steagall v. Doctors Hospital,* 171 F.2d 352, 353 (D.C.Cir. 1948); *Burns v. Anchorage Funeral Chapel,* 495 P.2d 70, 73 (Alaska 1972); *O'Dea v. Mitchell,* 350 Mass. 163, 213 N.E.2d 870, 872 (Mass.1966); *Dumouchelle v. Duke University,* 69 N.C.App. 471, 317 S.E.2d 100, 103

(N.C.Ct.App.1984); *Whitehair v. Highland Memory Gardens, Inc.,* 174 W.Va. 458, 327 S.E.2d 438, 443 (W.Va.1985); Restatement of Torts (Second) § 868 cmts. a, b (1977); 22A Am.Jur.2d *Dead Bodies* § 137 (1988); 25A C.J.S. *Dead Bodies* § 9 at pp. 520–21 (1966); James O. Pearson, Jr., Annotation, *Liability for Wrongful Autopsy,* 18 A.L.R. 4th 858, 865 (1982). This right typically belongs to the surviving spouse and, if none, then passes to the next of kin in the order of relation. *Steagall,* 171 F.2d at 353; *Burns,* 495 P.2d at 73; *Whitehair,* 327 S.E.2d at 443; Annot. 18 A.L.R.4th at 865.

There is nothing in its case law to suggest that Kansas courts would depart from these general standing rules. In *Alderman,* the Kansas Supreme Court held that the plaintiff widow was rightfully entitled to dispose of her deceased husband's body and to sue for an unauthorized autopsy. The Kansas court said, in relevant part:

> So in this case, the plaintiff had a right to the body of her dead husband in the condition in which it was when he died. She **alone** could give authority for an autopsy on that body, except in case where death might occur under such circumstances as to warrant the coroner in conducting an autopsy, a circumstance we do not have here. The unauthorized cutting into the body of plaintiff's husband was an invasion of that right.

146 Kan. at 702–703, 72 P.2d 981 (emphasis added). In *Hamilton,* the defendant's employees unearthed the plaintiff's mother's vault, removed the mother's casket and placed it into a new vault. The Kansas Supreme Court found that the plaintiff, as a child of the deceased, had standing to sue: "At the death of the husband of Olive Wright the right of care for the body of the mother belonged to all the children alike." 149 Kan. at 220, 86 P.2d 501. Both *Alderman* and *Hamilton* are consistent with the general rule that the person with the right to possess and bury the dead body is the only proper

2. The Act provides a priority list of those heir classes who can make tissue donations beginning with the spouse, then children, and so forth. By statute, children of the deceased can donate all

or part of the body only if the spouse is not available at the time of death. K.S.A. 65–3210(b).

party to sue and recover for the interference with that right.

■ Kansas has adopted the Uniform Anatomical Gift Act, which is set out in K.S.A. 65–3209 through 65–3218.[3] At K.S.A. 65–3210, the Act provides:

> (b) Any of the following persons, in order of priority stated, when persons in prior classes are not available at the time of death, and in the absence of actual notice of contrary indications by the decedent or actual notice of opposition by a member of the same or a prior class, may give all or any part of the decedent's body for any purpose specified in K.S.A. 65–3211:
>
> (1) the spouse,
>
> (2) an adult son or daughter,
>
> (3) either parent,
>
> (4) an adult brother or sister,
>
> (5) a guardian of the person of the decedent at the time of his death,
>
> (6) any other person authorized or under obligation to dispose of the body.

This provision creates a hierarchy of family members that enables a family member from the highest class available to consent to tissue donations and makes that donation wish binding on those family members in the lower classes. As the sole member of the highest donor class, the plaintiff Mary Perry had the exclusive right to donate her deceased husband's body regardless of her adult children's wishes. Once the parts were removed from Kenneth Perry's corpse, custody of the remainder vested in Mary Perry as the surviving spouse. K.S.A. 65–3215(a). Presumably then, only Mary Perry has standing to sue for interference with her exercise of rights.[4]

The defendants assume erroneously that the plaintiffs' different claims share an element on which the adult children's standing to sue depends. This shared element, according to the defendants, is that the plaintiffs prove a right to possess and bury Kenneth Perry's body. The defendants do not break down the plaintiffs' different counts and show this right to be a common element. Instead, the defendants argue without explanation that this right is inextricably intertwined with each of the plaintiffs' legal claims. For all the plaintiffs' claims but conversion, the defendants seek to import a requirement beyond the recognized elements.

In count one, the plaintiffs allege the tort of outrage or intentional infliction of emotional distress. This cause of action exists without the alleged conduct constituting another cognizable tort. "[O]ne who by extreme and outrageous conduct intentionally or reckless causes severe emotional distress to another may be liable for such emotional distress." *Moore v. State Bank of Burden*, 240 Kan. 382, 388, 729 P.2d 1205 (1986) (citation omitted). For the adult children to recover under this tort, they need not prove any existing right to possess or bury their father or to consent to the donation of his body. "[T]he tort of outrage is not based on any quasi property right as frequently permeates actions for violation of the right to disposition

---

3. The Act is intended to be a comprehensive statutory scheme establishing such things as any one over 18 may give all or part of his body for a recognized purpose with the gift effective upon death. K.S.A. 65–3210. It specifies who may be a donee and for what purposes. K.S.A. 65–3211. Donations can be made by will or other document like a donor card. K.S.A. 65–3212(a), (b). If the deceased expressed no preference, then the next of kin may give consent that either must be written or otherwise recorded. K.S.A. 65–3212(e). The Act lays out the rights and duties of those involved. K.S.A. 65–3215. When the entire body is given, the donee may accept or reject the gift. K.S.A. 65–3215(a). When a part of the body is given, the donee shall remove the part upon the donor's death "without unnecessary mutilation." K.S.A. 65–3215(a). The attending physician determines the time of death and is not to participate in the removal or transplanting of any part. K.S.A. 65–3215(b). "After removal of the part, custody of the remainder of the body vests in the surviving spouse, next of kin, or other persons under obligation to dispose of the body." K.S.A. 65–3215(a). The Act relieves a person from civil or criminal liability for good faith actions taken in accordance with the Act. K.S.A. 65–3215(c). The Kansas Legislature amended the Act in 1986 adding a provision requiring each Kansas hospital to develop a protocol for identifying potential donors and asking next of kin whether the decedent had authorized donation and, if not, whether the family wanted to donate body parts. K.S.A. 65–3218.

4. The court is not saying that the Act creates any cause of action on behalf of a donor.

of a dead body, but lies, instead, in favor of those persons to whom the emotional distress was inflicted, subject only to the limitations of proximate cause and foreseeability." *Golston v. Lincoln Cemetary, Inc.,* 573 S.W.2d 700, 710 (Mo.Ct.App.1978); *see* Restatement of Torts (Second). § 868 cmt. g (1977). The defendants do not challenge the adult children's standing against any of these recognized tort concepts. By being members of the immediate Perry family, the adult children presumably have standing to sue on the tort of outrage.

Count two alleges the defendants breached a binding contract with all of the plaintiffs for the donation of the corneas and the bone marrow without disfigurement to Kenneth Perry's body. The defendants argue the only purported contract is with Mary Perry, the surviving spouse, who had the exclusive right to donate Kenneth Perry's body. The defendants also contend the adult children do not become parties to the contract merely because they participated in the negotiations or offered advice and counsel to their mother. The defendants lose sight of the rule that dismissal is appropriate only if it is clear that the adult children could not recover under any set of facts that could be proved consistent with the allegations in count two. The defendants do not show that, as a matter of law, the adult children could not become parties to the alleged contract even though they lacked the present right to donate. Could not the adult children contract with the defendants for a particular harvest procedure in exchange for their promise to abide by, support, and counsel their mother in her decision to donate their father's body?[5] If able to prove such an arrangement consistent with the allegations in count two, then the adult children would appear to have an actionable contract claim.

Count three alleges that the defendants owed a duty to conform their procedures and actions to Nurse McDonald's representations and that they breached this duty when they removed the entire eyes and long bones. This count, in the court's understanding, does not allege that the defendants interfered with the surviving spouse's exclusive right to possess and bury Kenneth Perry's body. Consequently, the defendants offer no argument relevant to the adult children's standing to sue on this claim.[6]

■ Count five alleges the defendant American Red Cross converted the bones and tissues removed from Kenneth Perry's body. Conversion in Kansas is " 'an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another' resulting in some 'actual interference with' the rightful owner's possession of property." *Rajala v. Allied Corp.,* 919 F.2d 610, 632 (10th Cir.1990) (quoting *Desbien v. Penokee Farmers Union Co-op Ass'n.,* 220 Kan. 358, 365, 368, 552 P.2d 917 (1976)), *cert. denied,* 500 U.S. 905, 111 S.Ct. 1685, 114 L.Ed.2d 80 (1991). Mary Perry is the sole person who could claim a right to possess Kenneth Perry's body. Therefore, she is the only party with standing to prosecute this claim.

## B. Negligence Claim in Count III

As summarized above, count three alleges that the defendants had a duty to conform their acts to the representations of Nurse McDonald and that the defendants breached this duty with gross and wanton conduct. Count three further alleges that the defendants' negligence caused them emotional distress, pain and suffering, and attendant health care costs for the same.

---

**5.** "Many hospitals wishing to avoid costly litigation, simply refuse to harvest organs from those who had filled out organ donor cards if the family opposes donation." Note, *Personalizing Personalty: Toward a Property Right in Human Bodies,* 69 Tex.L.Rev. 209, 224 (1990).

**6.** Presumably, the adult children are alleging the defendants' duty arose under the alleged contract or under some theory akin to § 324A or § 323 of the Restatement of Torts (Second). The plaintiffs' recovery in tort depends on the defendants

violating a duty owed to them. "This duty can arise by common law, by statute, or by contract." *Wicina v. Strecker,* 242 Kan. 278, 286, 747 P.2d 167 (1987). The defendants did not challenge in their original briefs these other legal theories for a duty being owed to the adult children. The defendants did contest such legal theories in their reply memoranda. It is inappropriate for the court, however, to decide arguments raised for the first time in reply briefs when the other side has not responded to these arguments.

The defendants move to dismiss this claim arguing that the Kansas Supreme Court rejected this very kind of claim in *Burgess v. Perdue.* The Kansas court there fell in line behind what it saw as the majority rule:

> The majority rule holds that, for an individual to be liable for emotional distress for interfering with a dead body, the act must be intentional or malicious, as opposed to negligent, interference with the plaintiff's right to the body and that interference must be the proximate cause of the mental anguish and/or physical illness of the plaintiff. *Alderman* and *Hamilton,* which establish the Kansas right of action for the mishandling of corpses, involved conduct other than negligence. Both cases follow the majority rule of liability for interference with a dead body.

239 Kan. at 480, 721 P.2d 239.[7] As stated earlier, the court does not construe count three of the plaintiffs' complaint as alleging a claim for negligent interference with the surviving spouse's right to Kenneth Perry's body.[8] For this reason, the court does not believe the rule as precisely stated in *Burgess* is controlling here.

Nevertheless, "[i]t has long been the general rule in Kansas that there can be no recovery for emotional distress suffered by the plaintiff which is caused by the negligence of the defendant unless it is accompanied by or results in physical injury to the plaintiff." *Hoard v. Shawnee Mission Medical Center,* 233 Kan. 267, 274, 662 P.2d 1214 (1983) (citations omitted); *Hopkins v. State,* 237 Kan. 601, 612–13, 702 P.2d 311 (1985) (injury to or interference with property is not a substitute for physical injury). The plaintiffs do not allege physical injuries. Therefore, the plaintiffs are legally foreclosed from recovering on their negligence claim unless an exception applies. Damages for emotional distress are recoverable "in cases of a wrong where the act is wanton or willful or where the act is committed with malice and intended to cause mental distress." *Bowman v. Doherty,* 235 Kan. 870, 876, 686 P.2d 112 (1984); *see St. Clair v. Denny,* 245 Kan. 414, 422–23, 781 P.2d 1043 (1989). The plaintiffs allege in count three that the defendants' conduct was "gross and wanton." If the plaintiffs are able to prove the defendants recklessly disregarded the plaintiffs' rights and were completely indifferent to the probable consequences of their actions, that is, the defendants acted wantonly, then the plaintiffs may recover their damages for emotional distress under count three.

IT IS THEREFORE ORDERED that the defendants' motion to dismiss (Dks. 32 and 33) are granted to the extent that the plaintiff adult children, Ron Perry, Don Perry, Linda Huntsman, Beverly Blassingame and Vickie Puff, are dismissed from count five, and that none of the plaintiffs are entitled to recover damages for emotional distress on the ordinary negligence claim pleaded in count three.

IT IS FURTHER ORDERED that the defendant's motion to strike (Dk. 33) is denied as moot.

7. Prior to *Burgess,* the Kansas Supreme Court had construed *Alderman* and *Hamilton* differently:
> A limited exception to the general rule has been recognized in Kansas and other states where a close relative suffers emotional harm from the negligent mishandling of a corpse. See *Alderman v. Ford,* 146 Kan. 698, 72 P.2d 981 (1937); *Hamilton v. Individual Mausoleum Co.,* 149 Kan. 216, 86 P.2d 501 (1939); Prosser, Law of Torts § 54 at 329–30, and cases cited therein; 64 A.L.R.2d 100 § 8.

*Hoard v. Shawnee Mission Medical Center,* 233 Kan. 267, 274, 662 P.2d 1214 (1983).

8. The court interprets count three as it is plainly alleged in the plaintiffs' first amended complaint filed September 19, 1994. Based on other pleadings found in the record, the court does not purport to know what the plaintiffs actually intended to allege in count three. In responding to the defendants' motion to dismiss, the plaintiffs inexplicably referred to such other legal theories, as breach of fiduciary duty and conversion, in describing count three. The plaintiffs also denied that count three was a claim for negligent infliction of emotional distress. Still, just a week ago, the plaintiffs filed their proposed factual contentions for the pretrial order, (Dk. 101), and described their negligence claim as one for negligent infliction of emotional distress.